STATE EX REL. DRAINAGE DISTRICT NO. 8 OF PEMISCOT COUNTY, a Municipal Corporation, Relator, v. JOHN E. DUNCAN, Judge of the Circuit Court of Pemiscot County.—68 S. W. (2d) 679.

Court en Banc, February 3, 1934.

*Von Mayes* for relator.

*Ward & Reeves* for respondent.

ELLISON, J.—This is an original proceeding in prohibition. The relator is a drainage district organized by the County Court of Pemiscot County under Article IV, Chapter 41, Revised Statutes 1909, which, with amendments, is now Article II, Chapter 64, Revised Statutes 1929. Under that law the county treasurer of the county in which the district is located acts as treasurer thereof, holds custody of its funds and disburses the same. Between 1912 and 1922 the relator drainage district issued four sets or series of drainage bonds, a several part of each series maturing each year after issuance and the whole aggregating over $630,000. In January, 1932, bonds for the principal amount of $187,500 were past due and unpaid. One Charles W. Diekroeger was the owner and holder of certain of said matured bonds, and interest coupons, calling for a total sum of about $33,000. In that month he instituted eight mandamus proceedings in the Circuit court of Pemiscot County against the county treasurer to enforce payment in full of his said bonds and interest out of the funds of the district. The respondent judge of said circuit court issued alternative writs of mandamus, heard the causes on their merits and took the same under advisement.

While the mandamus proceedings thus stood pending in the circuit court, the drainage district, which was not joined as a party defendant therein, filed a petition for prohibition in this court alleging the respondent circuit judge was about to render judgment in said causes making peremptory the alternative writs of mandamus theretofore issued. The petition further charges such action would constitute an abuse and excessive exercise of jurisdiction for the reason that the relator district is insolvent; that it has about $46,000 on hand, which is a trust fund pledged for the equal benefit of all its issued bonds; that if the bonds and interest coupons of the plaintiff Diekroeger be paid in full the amount remaining in the treasury of the district will be insufficient to satisfy the other matured bonds and coupons which are equally entitled to payment; that the money necessary to retire the outstanding bond issues of the district never can be raised; and that all said bond issues should share ratably in the funds on hand and such as may be derived from further tax levies. And, finally, it is alleged that the district is an interested party as trustee of said funds, and that since it was not impleaded as a defendant in the mandamus proceedings and under the law could not intervene therein or appeal from the adverse judgment about to be rendered, its only recourse is to pray the issuance of a writ of prohibition out of this court.

Our provisional rule in prohibition being issued, the respondent circuit judge made return thereto denying at large that the drainage district is insolvent and affirming it suffers only temporary financial embarrassment because of the hard times, and will be amply able to pay all its bonds and interest in full out of delinquent tax collections and future tax levies within the benefit assessment made when the district was organized. The return admits the funds in the treasury of the district are not sufficient to pay all its matured bonds and coupons, and that other bonds in each of said four series are not yet matured. But as against this it is alleged the county treasurer in his capacity as treasurer of the drainage district is a mere ministerial officer whose absolute duty it is to pay matured bonds and coupons of the district whenever they are presented for payment, if the necessary funds be available at the time; that such funds are not trust funds, and are not under the control of the district. As regards the allegations in the relator's petition that it is not a party to the mandamus suits pending in the circuit court, the respondent's return avers that while the district is not a *record* party thereto, yet it in fact employed counsel, participated in said proceedings and conducted the defense. The return concludes with the assertion that the respondent circuit judge has jurisdiction to try mandamus proceedings and that the determination of the aforesaid causes pending in his court would not be a wrongful usurpation of judicial power.

I. The relator did not deny the averments of the return but filed a motion for judgment on the pleadings. In these circumstances facts well pleaded in the return together with the undenied allegations of the petition are to be taken as the facts of the case. [State ex rel. Darst v. Wurdeman, 304 Mo. 583, 264 S. W. 402.] Since the return denies the drainage district is insolvent and alleges it can pay all its bonds and interest coupons in full out of delinquent tax collections and future tax levies, the case must be ruled as if that fact had been conclusively proven. But the return does admit the district has not sufficient funds to pay all bonds and coupons now matured and entitled to payment. Whether, in that situation, the plaintiff below, Diekroeger, is entitled to payment in full of his bonds and coupons, is the principal question in the case—as the parties present it. It is true the return further asserts these funds are not trust funds and that the county treasurer is bound to pay matured bonds and coupons therefrom as presented. But that is a pure conclusion of law, not an allegation of fact, and is not binding on the relator or on us.

The successive steps in the organization of a drainage district under the county court law here involved are substantially the same

as those to be taken under the circuit court law. [Art. I, Chap. 64, R. S. 1929.] A plan for the project is first adopted. Next there is an assessment of the benefits which will accrue to each tract of land in the district from the construction of the improvement. If the aggregate benefits assessed exceed the estimated cost of construction the work may go on; otherwise, not. A special tax is levied against each tract of land in the district, which is in proportion to but cannot exceed the benefits charged there against. This tax levy is fixed at a figure which will pay the cost of constructing the improvement and incidental expenses, plus ten per cent for emergencies, plus interest on bonds if the project is financed in that manner; but the interest is not treated as a part of the cost of construction. Differing from the circuit court law, drainage districts established by the county court remain under the administrative control of that court (not a board of supervisors) and the county treasurer acts as treasurer of the district.

Section 10829 provides for the issuance of bonds by such districts. The aggregate par value thereof cannot exceed the total tax levy, exclusive of the ten per cent added for emergencies and the part included for interest on bonds. The bonds must be in denominations of $100 or multiples thereof, bear not to exceed six per cent annual interest payable semi-annually and a substantial amount of the total issue ''shall mature each year beginning not later than five years from the date of delivery for value of the first bonds;'' but none of the bonds shall mature later than twenty years from the date of issue. Principal and interest are payable at the office of the county treasurer. The section continues:

''Said bonds shall show upon their face the purpose for which they are issued and the principal and interest thereof shall be payable from the proceeds of the taxes levied upon the land and other property in the drainage district as hereinbefore provided. At the times any bonds are issued, a sufficient amount of the said drainage taxes shall be set aside and appropriated to pay the principal and interest of said bonds and it shall be the duty of the county court to arrange and determine the annual installments of said taxes so as to provide funds in due time for the payment at maturity of the principal and interest of any bond authorized and issued hereunder. The proceeds of any taxes so appropriated shall be used for the purpose of paying the principal and interest of said bonds and no other. If necessary to promptly pay said bonds and the interest thereon the county court shall rearrange the schedule of annual installments made at the time the taxes were levied and shall also make such additional tax levies as are necessary and shall provide for the collection of the same at such times as will produce the required amounts. Under no circumstances shall the county court make any tax levies which will in any

manner, or to any extent, impair the security of the bonds issued hereunder or the fund available for the payment of the principal and interest of the same. Bonds and coupons not paid at maturity shall bear interest at the rate of six per cent per annum until paid.''

In its essential provisions the above-quoted Section 10829 is substantially identical with Section 10788, Revised Statutes 1929, construed in State ex rel. Sturdivant Bank v. The Little River Drainage District, 334 Mo. 753, 68 S. W. (2d) 671. The statute says the principal and interest of the bonds ''shall be payable from the proceeds of the taxes levied upon the land and other property in the drainage district as hereinbefore provided.'' A previous section, Section 10823, requires that the taxes ''shall be apportioned to and levied on each tract of land or other property in said district in proportion to the benefits assessed and not in excess thereof.'' Section 10829 goes on to say that at the time any bonds are issued ''a sufficient amount of the said drainage taxes shall be set aside and apportioned to pay the principal and interest of said bonds,'' and then declares ''the proceeds of any taxes so appropriated shall be used for the purpose of paying the principal and interest of said bonds and no other.'' In addition to this the section admonishes that ''under no circumstances shall the county court make any tax levies which will in any manner, or to any extent, impair the security of the bonds issued hereunder or the fund available for the payment of the principal and interest of the same.'' The effect of these provisions is to make collected taxes appropriated for the payment of bonds and interest a trust fund for the benefit of all bonds issued.

But, notwithstanding this, the statute plainly contemplates that taxes shall be levied to pay the bonds as they mature and interest as it accrues. In fact there is a specific declaration that ''it shall be the duty of the county court to arrange and determine the annual installments of said taxes so as to provide funds in due time for the payment at maturity of the principal and interest of any bond authorized and issued hereunder.'' And thereafter the section directs that ''if necessary to promptly pay said bonds and the interest thereon the county court shall rearrange the schedule of annual installments made at the time the taxes were levied and shall also make such additional tax levies as are necessary and shall provide for the collection of the same at such times as will produce the required amounts.'' (These additional levies must, of course, as the section earlier provides, be within the benefit assessment.)

The statutory provisions summarized in the preceding two paragraphs, viewed together, mean that treasury funds realized from the collection of taxes appropriated for the payment of bonds and interest constitute a trust fund for the equal benefit of all issued bonds and interest coupons. But if the district is solvent and can in

orderly course retire its bonds as they mature and pay interest thereon as it accrues, then the funds on hand from time to time are primarily pledged to the payment of such matured (and after them the next maturing) obligations. We so construed Section 10788, Revised Statutes 1929, in the Sturdivant Bank case, 334 Mo. 753, 68 S. W. (2d) 671, and Section 10829, here involved is to the same effect. If separate appropriations are made to pay separate series of bonds and separate levies are provided for each series and go into a separate fund, perhaps each fund would be held in trust for the payment of matured and next maturing bonds of the series it was created to retire. We do not decide that question in this case because it is not raised. So far as appears from the record here, all the money in the hands of the county treasurer is available for the payment of any and all matured bonds and coupons issued by the relator district, of whatever series.

As stated above the question in this case is whether as *between* such matured bonds and coupons the money on hand is a trust fund which must be disbursed *ratably* for the equal benefit of all past due bonds and coupons, even though the district is solvent, or whether Diekroeger, the plaintiff below, can enforce payment of his bonds and coupons in full, leaving the other matured bonds and coupons to await further tax levies and collections. The latter view, advanced by the respondent circuit judge, is sustained by State ex rel. Bliss v. Grand River Drainage District, 330 Mo. 360, 49 S. W. (2d) 121, decided by this court en banc in May, 1932. And it must be conceded the same doctrine is followed in several other jurisdictions. [See State ex rel. Gillespie v. Carlton, 103 Fla. 810, 822, 138 So. 612, 618, and cases there cited.]

These foreign decisions say that where a drainage district, municipal corporation, or the like, has "an inexhaustible taxing power" the fact that the funds in its hands at a given time are not sufficient to pay all its bonds and interest then due, is no reason why particular matured bonds should not be paid in full on demand (especially where the bonds bear interest beyond maturity until paid), since the fund can be replenished by further tax levies. Now drainage districts organized under our Missouri county court and circuit court laws have no inexhaustible taxing power because they are restricted to the amount of benefits assessed. Nevertheless, when they are solvent and the collectible reserve in the benefit assessment is sufficient to retire all bonds and interest, they can make necessary replenishments of the bond and interest fund, so the effect is the same as if they had an inexhaustible power to tax, and the foreign decisions referred to above are in point. But notwithstanding the ruling in the Bliss case and these cases from other jurisdictions, we indicated a contrary view in State ex rel. Sturdivant Bank v. The

Little River Drainage District, 334 Mo. 753, 68 S. W. (2d) 671, and shall set out the reasons for our conclusion more at length in this opinion.

As the Bliss case concedes, the statutes are wholly silent as to preferences between the holders of matured drainage bonds. Section 10829 says "a substantial amount" of the total bonds issued shall mature each year, and then requires the tax levies to be arranged in such manner that they may be paid promptly as they mature. Matured bonds and interest are treated in a class, or classes. Each year *all* such are to be paid from a trust fund created through an annual tax levy made in advance for that purpose. There is no more reason for saying one matured bond should be preferred over others in its class and be paid in full when the fund is insufficient to pay all, than there is for contending it should be paid in full when the district is insolvent. True, if the district is not insolvent the trust fund can be replenished; but that does not justify a diversion of the fund to the full payment of particular matured bonds when other bonds having an equal claim thereon are thereby forced further to abide future collections and eventualities. All matured bonds should share *ratably* in the fund as it stands and likewise in replenishments thereof. In that way all will be paid in full without discrimination or chance of miscarriage, receiving interest to the date of payment if the bonds so provide.

█ The statute gives them no rights beyond that. It contemplates, of course, that all bonds, and therefore each particular bond, shall be paid in full, but above that it requires equality. When the fund on hand will not satisfy all, the holders of matured obligations can bring mandamus to compel payment of the ratable portion due them; or if the board of managers of the district (in this case the county court) refuse to make adequate tax levies which will permit full payment of bonds and interest due, mandamus will lie to correct that situation. [Sec. 10885, R. S. 1929.] But a scramble between matured bondholders to obtain full payment of their bonds would seldem occur if there were not doubts as to the solvency of the district and the ultimate payment of all bonds in full. If, in fact, the district is not solvent every equitable consideration underlying the statute calls for the bondholders to share ratably; if the district is solvent, then the real remedy is to compel the making of sufficient tax levies and collections to pay all matured bonds and interest.

The rule announced in many cases is that when a trust fund raised by special assessment is insufficient to pay all having equal claims upon it, payment should be made ratably. If a drainage district be insolvent, as held in the Sturdivant Bank case, 334 Mo. 753, 68 S. W. (2d) 671, all outstanding bonds (those not due as well as those matured) must be taken into consideration in the apportionment of the fund. If the district is solvent there still must be an apportion-

ment but it is limited to matured bonds and coupons because in that situation the statute pledges the fund on hand from time to time to the payment of matured (and after that next maturing) principal and interest. We understand this view to be in accord with the following decisions which we cited in the Sturdivant Bank case, supra, and here refer to again. [Rothschild v. Village of Calument Park, 262 Ill. App. 96, 106; Thomas v. Patterson, 61 Colo. 547, 159 Pac. 34; Norris v. Montezuma Valley Irr. Dist., 240 Fed. 825; Norris v. Montezuma Valley Irr. Dist., 248 Fed. 369: Rohwer v. Gibson, 126 Cal. App. 707, 14 Pac. (2d) 1051.]

■ II. But, while we have thus ruled the merits of the controversy in harmony with the relator's contention, it does not follow that our provisional rule in prohibition should be made absolute. There is no doubt about the fact that the relator district may ask prohibition, notwithstanding it is a stranger to the proceeding whereat the writ is aimed. [State ex rel. Darst v. Wurdeman, 304 Mo. 1. c. 588, 264 S. W. 1. c. 404; State ex rel. Priest v. Calhoun, 207 Mo. App. 149, 155, 226 S. W. 329, 331-2.] But prohibition is an extraordinary remedy available only when the lower court is proceeding without jurisdiction or in excess of its jurisdiction. [State ex rel. Hyde v. Westhues, 316 Mo. 457, 469, 290 S. W. 443, 446.] If it is acting within the limits of its jurisdiction we cannot control its discretion or coerce a particular judgment through the issuance of a writ of prohibition. [50 C. J., par. 20, p. 665; State ex rel. Hog Haven Farms v Pearcy, 328 Mo. 560, 574-5, 41 S. W. (2d) 403.] The circuit court has undoubted jurisdiction to hear and determine the mandamus proceedings pending below, and while a judgment therein contrary to the ruling in this opinion would be error, the matter cannot be reached by prohibition, even though the relator is not a party to those proceedings and cannot appeal. Accordingly, the provisional rule heretofore issued is discharged. All concur, except *Hays, J.,* absent.