### GRONER et al. v. UNITED STATES ex rel. SNOWER.

### BLISS et al. v. SAME.

### Nos. 9893, 9894.

Circuit Court of Appeals, Eighth Circuit.
Sept. 25, 1934.

Dean H. Leopard, of Gallatin, Mo., for appellants George N. Groner and others.

John F. Rhodes, of Kansas City, Mo. (Justin D. Bowersock and Robert B. Fizzell, both of Kansas City, Mo., on the brief), for appellants Wyllys K. Bliss and others.

Paul E. Basye, of Kansas City, Mo. (I. P. Ryland, Paul R. Stinson, Arthur Mag, Roy B. Thomson, and Alfred M. Seddon, all of Kansas City, Mo., on the brief), for appellee.

Before STONE, Circuit Judge, and JOYCE and BELL, District Judges.

STONE, Circuit Judge.

Appellee in these two appeals is the owner of matured bonds of the Hope Drainage District, organized under the statutes of Missouri. Appellants in No. 9893 are the officers of that district. Appellants in No. 9894 are holders of other bonds of the district, both matured and unmatured. Appellee secured a judgment against the district for the payment of his bonds and had issued in aid thereof an execution and also a writ of garnishment against a bank wherein were deposited funds of the district. Motions to quash this execution and this writ of garnishment were before the court below. Also, appellee, by an ancillary proceeding in mandamus against the officers of the district, sought to require payment of his judgment by them out of the funds on hand in the bank. In this latter proceeding, the appellants in No. 9894 were permitted to intervene, setting up their rights in an intervening petition. Response was made to the alternative writ by the officers of the district and appellee moved to strike out the above intervening petition and, alternately, for judgment on the pleadings as to it. The trial court disposed of all of these matters, as follows: (1) It sustained the motions to quash the execution and to dissolve the garnishment on the ground that the proper remedy was mandamus and not execution or garnishment; (2) for the same reason, it denied a motion of appellee requiring the garnishee to pay into court the funds of the district in its hands; (3) it accorded a peremptory writ of mandamus requiring the district to pay in full the matured bonds of appellee. From so much of the above judgment as accorded the peremptory writ these two appeals are brought.

Appellee challenged below, and continues here to challenge, the right of the other bondholders to intervene. This matter may be shortly disposed of, since their interest in the main controversy is clear and it was within the sound judicial discretion of the trial judge to permit or to refuse intervention.

The large question in these appeals is the same and is whether, under the facts here, appellee is entitled to full payment of his bonds from the funds on hand or must share ratably with other bondholders. The conten-

tion of appellee, upheld by the court, is that he is entitled to full payment. The contention of the district and of the intervening bondholders is substantially the same though somewhat differently stated: That of the district is that appellee must share ratably with all outstanding bonds or, if this be not true, with all unpaid matured bonds; that of the intervening bondholders is that appellee must share ratably with the unpaid matured bonds and there are some statements in the intervening petition which intimate, more or less clearly, that if this be not true he must share ratably with all the outstanding bonds.

The essential facts here shown are as follows: This drainage district was organized under the statutes of Missouri. It issued and sold a total of $294,000 of its bonds in 1923. A definite amount of these bonds came due on February 1, of each year, beginning 1928, and ending 1943; $44,000 of these bonds became due before or by February 1, 1930, and were paid. Appellee owned and obtained the above judgment upon four bonds due February 1, 1931, in the principal amount of $4,000 plus accumulated interest thereon. Of the remaining $246,000 of outstanding bonds, interveners owned $9,000 of the $16,000 in bonds maturing February 1, 1931, and $9,000 of the $17,000 in bonds maturing February 1, 1932. At the time of the proceedings in this case all bonds due in 1931 and 1932 were due and, apparently, all were in default. In addition to the above-matured bonds held by them, interveners were holders of approximately $142,000 of bonds maturing after 1932. At the time of these proceedings the district had on hand only $4,505.75. In its response the district pleaded as follows: "That due to floods, droughts, decline in value of lands and farm products, combined with prevailing conditions of depression, all of which conditions peculiarly and especially affect the bottom lands in said district, the value of lands in said district and the ability of land owners to pay taxes have so declined and decreased that it is impossible to collect or enforce the payment of any considerable amount of taxes; that there is no market or sale for said bottom land and the payment of assessments thereon cannot be enforced by judgment and sale; that if present conditions continue it will be several years, if at all, before an amount can be realized from taxation equal to the present amount of defaulted obligations; that by reason of such conditions and the decline in value of said lands, the district is now and will be unable to meet its obligation in full and it is and will be impossible to

collect or to enforce the payment of a sufficient amount of the benefits assessed against said lands to pay in full all of the bonded indebtedness of said district."

In the intervening petition it was pleaded as follows: "That if a permanent writ of mandamus is awarded the funds of the District on hand will be entirely exhausted; that it will be impossible for the holders of other matured obligations of the District to obtain payment of their claims or any part thereof for an indefinite period, if at all; that tax has been heretofore levied to the full amount permitted under the assessment schedule adopted at the time of the issuance of said bonds; that under present conditions and circumstances the lands in the District subject to taxation are not of sufficient value to pay the tax to which they are now and will be subjected for the payment of outstanding obligations."

In reaching his conclusion the trial court relied upon the then latest decision of the Supreme Court of the State of Missouri. State ex rel. Bliss v. Grand River Drainage District, 330 Mo. 360, 49 S.W.(2d) 121. He properly construed that decision to mean that where there is no insolvency of the district shown, a holder of matured bonds is, on presentment and demand, entitled to the full payment thereof even though the collected funds of the district for bond purposes are insufficient to pay all of the then matured bonds. He then proceeded to examine the record to ascertain whether it could therefrom "be said with any degree of certainty that the fund (not the fund collected only, but the fund which may be collected) out of which bondholders are to be paid will be insufficient to pay all." Concluding that the response was insufficient to show such insolvency and following the ruling in the Bliss Case, he ordered the peremptory writ.

It seems to us that, assuming a proper finding on the matter of insolvency, the Bliss decision compelled the result reached by the trial court. However, we are faced here with two decisions which are later than the orders here appealed from and which have the effect of overruling the Bliss Case. These cases are State ex rel. Drainage District No. 8 of Pemiscot County, Missouri, v. Duncan (Mo. Sup.) 68 S.W.(2d) 679, and State ex rel. Sturdivant Bank v. Little River Drainage District (Mo. Sup.) 68 S.W.(2d) 671.

In the Bliss Case there was no question of insolvency but the situation was merely one where the collections by the district were not sufficient to meet all of the matured

bonds. The position there of the defendant district was that if the amount collected in each year was not sufficient to pay all of the principal and interest of the bonds coming due in that year the holders of such bonds are entitled to payment of "only an amount proportioned to the whole amount of bonds and coupons becoming due" in the year. 49 S.W.(2d) 121, at page 124. Stating that it did not appear that the taxing power of the district had been exhausted nor that the future exercise of that power would not obtain necessary funds to pay all of the bonds, the court there held that the law placed upon the district "the imperative duty to pay matured and maturing bonds and interest installments as long and as often as funds are available for that purpose." 49 S.W.(2d) 121, at page 125.

The Bliss decision was in April, 1932. February 3, 1934, the Sturdivant Bank Case was determined by the Supreme Court of the state. That case involved the contention by a bondholder that it was the duty of the district upon presentation of matured bonds "to pay in full bonds and interest coupons as they mature, notwithstanding the district may be insolvent; and * * * that when the funds on hand are insufficient to pay all matured bonds and coupons the money should be applied as far as it will go to the satisfaction of such of said bonds and coupons as are presented for payment, though the fund be thereby exhausted to the prejudice of the other matured bonds and coupons." 68 S.W.(2d) 671, at page 674. This position was denied by the court, the rule being announced that where the district is insolvent "the payment in full of bonds and coupons as they mature is contingent on whether the drainage district is solvent—or, in other words, on whether there are and will be, so far as appears, sufficient tax revenues to pay all bonds and coupons in full." 68 S.W.(2d) 671, at page 675. This opinion discusses the Bliss Case which was relied upon by the relator there. As to that case, it says two things: First, that the "essential point involved in the instant case," 68 S.W.(2d) 671, at page 676, which was the situation of an insolvent district, was not present in the Bliss Case; and, second: "We have already held in this opinion that when a drainage district organized under article 1, c. 64, R. S. 1929 [Mo. St. Ann. § 10743 et seq., p. 3463 et seq.], is solvent, funds on hand from time to time are primarily pledged to the payment of matured and next maturing bonds and interest. We have further held that in such situation *as* *between* the several matured and maturing bonds and coupons the funds are a trust fund against which all such bonds and coupons have an equal claim. To that extent there appears to be conflict between the Bliss Case and this. But we reserve fuller discussion of that question for the opinion in State ex rel. Drainage District No. 8 v. Duncan (No. 32724) 68 S.W.(2d) 679." 68 S.W.(2d) 671, at page 676.

The Duncan Case involved a situation where, as in the Bliss Case, the district was solvent but there were not sufficient funds on hand to pay all of the matured bonds and coupons. The court says: "The question in this case is whether *as between* such matured bonds and coupons the money on hand is a trust fund which must be disbursed *ratably* for the equal benefit of all past-due bonds and coupons, even though the district is solvent, or whether Diekroeger, the plaintiff below, can enforce payment of his bonds and coupons in full, leaving the other matured bonds and coupons to await further tax levies and collections." 68 S.W.(2d) 679, at page 683. The rule is then announced that: "All matured bonds should share *ratably* in the fund as it stands and likewise in replenishments thereof. In that way all will be paid in full without discrimination or chance of miscarriage, receiving interest to the date of payment if the bonds so provide. The statute gives them no rights beyond that. It contemplates, of course, that all bonds, and therefore each particular bond, shall be paid in full, but above that it requires equality." 68 S.W.(2d) 679, at page 683. The opinion then declares the entire rule both where the district is solvent and where it is insolvent, as follows:

"The rule announced in many cases is that when a trust fund raised by special assessment is insufficient to pay all having equal claims upon it, payment should be made ratably. If a drainage district be insolvent, as held in the Sturdivant Bank Case, supra, 68 S.W.(2d) 671, all outstanding bonds (those not due as well as those matured) must be taken into consideration in the apportionment of the fund. If the district is solvent there still must be an apportionment, but it is limited to matured bonds and coupons because in that situation the statute pledges the fund on hand from time to time to the payment of matured (and after that next maturing) principal and interest." 68 S.W.(2d) 679, at page 684. The Bliss Case is directly overruled. 68 S.W.(2d) 679, at page 683.

**130**

 Although correct in view of the law of the state as announced at the time it was entered, it is quite clear that the judgment below is erroneous under the two later decisions above. The effect of those two decisions on this case is as follows: If the record here made establishes solvency, appellee is not entitled to have his bonds paid in full but must share ratably with the other matured bonds and coupons; if insolvency is shown, he must share ratably with all of the outstanding bonds. Concerning the proof as to solvency vel non, the burden of proving a condition of insolvency is on the party alleging it. State ex rel. Sturdivant Bank v. Little River Drainage District (Mo. Sup.) 68 S.W.(2d) 671, 675. His remedy, when the fund on hand will not satisfy all, is to bring mandamus to compel payment of the ratable portion due him and if the district should refuse to make adequate tax levies which will permit full payment of bonds and interest, to compel the making of such sufficient tax levies and collections. State ex rel. Drainage District No. 8 of Pemiscot County, Missouri, v. Duncan (Mo. Sup.) 68 S.W.(2d) 679, 683. Therefore, the final matter as to which of the above two bases of apportionment shall be here employed depends upon whether respondent and intervener, either or both, have sufficiently pleaded insolvency.

In adverting to the matter of insolvency, the court, in the Bliss Case, intimates that insolvency might be established by a showing, as to the powers of the district to assess, levy, and collect taxes for the purpose of paying the bonds, "that the future exercise of that power will not be fruitful in obtaining the necessary funds." 49 S.W. (2d) 121, 125. In the Sturdivant Bank Case the reasons assigned in the response there, 68 S.W.(2d) 671, 672, why funds had not been collected to pay the maturing bonds, are very similar to that above quoted from the response in this case. Those facts were there held to be a sufficient statement of insolvency against demurrer. In view of what has just been said as to the expressions in the Bliss and Sturdivant Bank Cases and in view of the hereinbefore quoted expressions as to the financial status of the district in the case before us (found in the response of the district and in the intervening petition and which, under the pleadings here, must be taken as true), we think the insolvency of the district is sufficiently pleaded.

Conclusion.

Apparently, the sole purpose of appellee in bringing these proceedings was to se-cure the full payment of his bonds. It may be that he would not be interested in compelling the district to make to him a payment ratable on the basis either of all of the outstanding or of all of the matured bonds. Also, it may be that the district would be entirely willing to make such ratable payment, since it alleges, in its response, that such is the proper basis for payment. In this condition of affairs, the case should be remanded with instructions to follow the above expressions of law, thus enabling the trial court to make such disposition of the matter as it properly may in accord with the situation and desires of the parties in view of the above announced rules.

The cases are reversed and remanded for further proceedings in harmony with this opinion.