**UNITED STATES v. 12,800 ACRES OF LAND, ETC., IN HALL COUNTY, NEB. et al.**

Civ. No. 38.

District Court, D. Nebraska, Grand Island Division.

Jan. 6, 1947.

H. G. Wellensilk, of Grand Island, Neb., for Charles Verne Heaton and others.

Charles Barth, of Seward, Neb., for Opal Hobson and George Tyrrell, her husband; Sarah E. Hobson and Thomas B. Hobson, her husband.

Harold A. Prince and S. J. Shada, both of Grand Island, Neb., for Bessie B. Snook in Tract No. 53 and Myrtle E. Snook in Tract No. 54.

A. Z. Donato, Asst. U. S. Atty., of Omaha, Neb., for petitioner.

DONOHOE, District Judge.

This is a condemnation proceeding by the United States to acquire certain land,

including parcels hereinafter referred to as Tract No. 53 and Tract No. 54, for the establishment of the Cornhusker Ordnance Plant.

The proceedings were commenced on March 25, 1942, by the filing of a Petition in Condemnation under the authority of and pursuant to the provisions of an Act of Congress approved August 18, 1890, 26 Stat. 316, as amended by the Acts of Congress approved July 2, 1917, 40 Stat. 241, and April 11, 1918, 40 Stat. 518, 50 U.S.C.A. § 171, which Act authorized the acquisition of land for military purposes, the Act of Congress approved March 11, 1941, Public No. 11—77th Congress, 22 U.S.C.A. § 411 et seq., and the Act of Congress approved April 5, 1941, Public No. 29—77th Congress, 55 Stat. 123, and all other Acts, or parts of Acts supplementary to and amendatory of said Acts.

The United States, after taking possession of the land pursuant to an order of the district court, invoked the court's jurisdiction under the Declaration of Taking Act, 40 U.S.C.A. § 258a, by filing a Declaration of Taking and depositing in the registry of the court $13,952 as the amount of estimated just compensation for the taking of Tract No. 53 and Tract No. 54. A Judgment on the Declaration of Taking was filed on June 30, 1942, and a board of appraisers appointed by the court subsequently filed a report awarding $5,820 as compensation for Tract No. 53, and $9,648 as compensation for Tract No. 54.

Notices of Appeals from the appraisers' award were filed, and the court, after the parties perfecting the appeals had waived a jury, found that $5,820 and $9,600 was the amount of just compensation for Tract No. 53 and Tract No. 54 respectively. The total of these sums is now deposited with the registry of the court.

The proceedings are now before the court on an application for disbursement of the funds.

It is necessary, for an understanding of the questions presented, to set forth in detail numerous facts and circumstances which have led up to the present controversy.

The parties appearing agree that prior to June 28, 1930, Phebe A. Wilken was the sole owner in fee simple of both Tract No. 53 and Tract No. 54. On that date, she signed and acknowledged an instrument in the form of a warranty deed, by which she undertook to convey Tract No. 54 to herself and a niece, Myrtle E. Snook, as joint tenants with the right of survivorship. The instrument, omitting the signatures and acknowledgment, is in the following language:

"Know All Men by These Presents, That Phebe A. Wilken, single, in consideration of One & NO.100...Dollars, in hand paid, do hereby grant, bargain, sell, convey and confirm unto Phebe A. Wilken and Myrtle E. Snook as Joint Tenants, and not as tenants in common; the following described real estate, situate in the County of Hall and State of Nebraska, to-wit: Northeast Quarter of Section Eighteen (18) Township Eleven (11), North of Range Ten (10), West of the 6th P.M. together with all the tenements, hereditaments, and appurtenances to the same belonging, and all the estate, title, dower, right of homestead, claim or demand whatsoever of the said grantor of, in or to the same, or any part thereof; It being the intention of all parties hereto, that in the event of the death of either of said grantees, the entire fee simple title to the real estate described herein shall vest in the surviving grantee.

"To have and to hold the above described premises, with the appurtenances, unto the said grantees as Joint Tenants, and not as tenants in common, and to their assigns, or to the heirs and assigns of the survivor of them, forever, and I the grantor named herein for myself and my heirs, executors, and administrators, do covenant with the grantees named herein and with their assigns and with the heirs and assigns of the survivor of them, that I am lawfully seized of said premises; that they are free from incumbrance except as stated herein, and that I the said grantor have good right and lawful authority to sell the same, and that I will and my heirs, executors and administrators shall warrant and defend the same unto the grantees named herein and unto their assigns and unto the heirs and assigns

of the survivor of them, forever, against the lawful claims of all persons whomsoever, excluding the exceptions named herein."

This instrument was recorded by Mrs. Wilken in the office of the Register of Deeds of Hall County, Nebraska, on July 28, 1930.

On September 1, 1930, Phebe A. Wilken, who was then the sole owner of Tract No. 53, signed and acknowledged a similar instrument by which she undertook to convey Tract No. 53 to herself and another niece, Bessie B. Snook, as joint tenants with the right of survivorship. This instrument, which recites that it is in consideration of "Other considerations, and Ten Dollars" was in language substantially the same as that of the instrument previously quoted in this memorandum, and was recorded by Mrs. Wilken on October 11, 1930.

It is stipulated by all parties appearing in this proceeding that both of these deeds were duly signed, acknowledged, witnessed, delivered and recorded. (See Pre-trial Investigation and Order, Ex. 18.)

Phebe A. Wilken, a resident of California at the time of her death, died testate on May 22, 1941. Under the provisions of her will, which was executed on April 20, 1937, Phebe A. Wilken devised and bequeathed certain property and sums of money to named beneficiaries, and gave the residue of her estate to an adopted daughter, Grace M. Cline. By the terms of a codicil executed on February 8, 1940, Phebe A. Wilken canceled the provisions of the will giving the residue of her estate to her adopted daughter and, it is claimed, disposed of the residue by giving certain interests therein to enumerated beneficiaries, including a 20/233 interest to each of the following: Margaret Steele Holmes, Charles Verne Heaton, Sarah E. Hobson, and Opal Hobson Tyrrell. It is also contended that Edward Wilken and Alta Pickrell were each given a 10/233 interest in the residue.

The will and codicil were admitted to probate in the Superior Court of San Diego County, California, on June 13, 1941, and the First National Trust & Savings Bank of San Diego was appointed and qualified as executor.

The executor thereafter filed a petition for a construction of the will, and the California court, on December 12, 1941, determined that Phebe A. Wilken had died intestate as to the residue of her estate, and that such residue was distributable to the adopted daughter, Grace M. Cline.

On June 9, 1942, which was shortly after the filing of the original Petition in Condemnation, Charles Verne Heaton filed in the California court a notice of a motion to set aside the order of December 12, 1941, finding that the residue of the estate of Phebe A. Wilken was distributable to Grace M. Cline. A stipulation between Charles Verne Heaton and Grace M. Cline was thereafter filed in the California court. Under the terms of this stipulation, Heaton agreed to make no further claim against the residuary sum of $1,222.18, which had been distributed to Cline pursuant to an order of distribution dated May 1, 1942, and Cline agreed that the order of December 12, 1941, should be amended to provide that the residuary estate should be distributed pursuant to the terms of the will as amended by the codicil. The California court thereafter amended its order of December 12, 1941, in conformity with the terms of this stipulation.

On June 29, 1942, Charles Verne Heaton, who is a brother of Bessie and Myrtle Snook and a nephew of Phebe A Wilken, commenced proceedings in the County Court of Hall County, Nebraska, for the probate of the will and codicil of Phebe A. Wilken as a foreign will, and asked that he be appointed administrator with will annexed.

Objections to the appointment of Charles Verne Heaton as administrator with will annexed and to administration of the estate of Phebe A. Wilken in the County Court of Hall County, Nebraska, were filed by Myrtle E. Snook. The court overruled the objections, and an order was entered on August 22, 1942, admitting the will and codicil to probate as a foreign will and appointing Charles Verne Heaton as administrator with will annexed of the estate of Phebe A. Wilken. It appears that no appeal was taken from this order, and that the order has become final.

On October 15, 1943, Charles Verne Heaton, individually and as administrator with will annexed, Edward Wilken and Alta Pickrell filed an answer in the instant condemnation proceedings setting forth, in substance, the provisions of the will and codicil and the proceedings relating to the probate thereof. The answer alleges that the deeds executed by Phebe A. Wilken in 1930 whereby she attempted to convey Tract No. 53 and Tract No. 54 to herself and Bessie and Myrtle Snook, as joint tenants with the right of survivorship, are void under Nebraska law. There is then a demand that the money deposited in the registry of the court as compensation for these tracts be paid over to Charles Verne Heaton, administrator with will annexed, for distribution, after the payment of costs, expenses and fees, under the terms of the will and codicil, as part of the residue of the estate of Phebe A. Wilken. The answer also contains a demand, in the alternative, that the money now deposited be distributed by paying Charles Verne Heaton, administrator with will annexed, $814.60, and that the residue be paid to Charles Verne Heaton, Edward Wilken, Alta Pickrell, and the other residuary legatees named in the will and codicil in such share and proportion as is provided by the terms of the will and codicil. The sum of $814.60 sought by Charles Verne Heaton, administrator with will annexed, represents court costs, and publication and filing fees in the amount of $64.60 incurred in connection with the probate of the will and codicil in the County Court of Hall County, Nebraska, an administrator's commission of $250, and $500 as an attorney's fee for legal services rendered by the administrator's attorney.

An answer in the instant proceedings was filed on October 15, 1943, by Opal Hobson Tyrrell and husband, George Tyrrell, and by Sarah E. Hobson and husband, Thomas J. Hobson. It may be stated, parenthetically and for the purpose of clarification, that Opal Hobson Tyrrell was a niece of Phebe A. Wilken, and that Sarah E. Hobson was her (Mrs. Wilken's) sister.

The answer, after challenging the validity of the deeds whereby Phebe A. Wilken attempted to convey the land in question to herself and Bessie and Myrtle Snook, as joint tenants with the right of survivorship, sets forth the proceedings relating to the probate of the will and codicil, and alleges that Tract No. 53 and Tract No. 54 formed a part of the residue of the estate of Phebe A. Wilken. It is alleged that under the provisions of the will and codicil, Opal Hobson Tyrrell and Sarah E. Hobson were each devised an undivided 20/233 interest in these tracts, as part of the residue of the estate of Phebe A. Wilken, and it is requested that the funds be paid to Opal Hobson Tyrrell and Sarah E. Hobson to the extent of their interests therein.

With the foregoing resume of material matters serving as a preliminary factual background, we shall proceed to consider the issues and contentions which are raised in this proceeding.

Of course, the condemnation award now stands in lieu of the condemned land, and only those who had an estate in that land have any interest in the fund representing this award. See Oliver v. United States, 8 Cir., 156 F.2d 281; United States v. 25.936 Acres of Land, etc., 3 Cir., 153 F. 2d 277. Since Tract No. 53 and Tract No. 54 are situated in the State of Nebraska, the law of that state, the lex loci rei sitae, governs in deciding questions as to the title and estates or interests in this land. DeVaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827. And the federal court must now be guided by local state law in determining substantive rights in the instant condemnation proceeding, regardless of how jurisdiction is acquired, United States v. Becktold Co., 8 Cir., 129 F.2d 473; Swanson v. United States, 9 Cir., 156 F.2d 442; unless those rights are grounded upon the Constitution or laws of the United States, United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, in which case the federal courts must fashion the governing rules according to their own standards. Cf. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Deitrick, Receiver, v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694.

The nub of controversy in this proceeding centers around and springs from the interpretation and application of local state

law regarding the force and effect of the deeds whereby Phebe A. Wilken conveyed the land in question to herself and Bessie and Myrtle Snook, as joint tenants with the right of survivorship. Stated briefly, the case for the parties now contesting the claims of the Snooks rests primarily upon the decision of the Supreme Court of Nebraska in Stuehm v. Mikulski, 139 Neb. 374, 297 N.W. 595, 137 A.L.R. 327. It is contended that the federal court is now bound by this decision, and that under it the deeds are void and do not convey an interest to Bessie and Myrtle Snook. From this premise, it is argued that Phebe A. Wilken was the absolute owner of Tract No. 53 and Tract No. 54 at the time of her death, and that therefore this land passed under her will, as amended by the codicil, as a part of her residuary estate.

After thorough and extended consideration, including particularly a study of Nebraska law dealing with the creation and nature of joint tenancies in real estate, the court concludes that these contentions are, for several reasons, untenable in the circumstances of this case.

First, a careful examination of the majority opinion in Stuehm v. Mikulski, supra, discloses that the opinion is not as broad in its effect as counsel now contend, and that there were a number of circumstances which clearly distinguish that case from the one now appearing under the evidence in the instant proceeding. The material provisions of the deed, which was under consideration in the Mikulski case, were substantially the same as those now appearing in the deeds to Bessie and Myrtle Snook, but note the following from the opinion in 139 Neb. at page 376, 297 N.W. at page 596, 137 A.L.R. 327: "The form of this deed, when executed without consideration and without reference to, and not for the purpose of carrying out, any contract that specified the characteristics of the estate intended to be created, raises a question new to this jurisdiction. Its decision is appropriate."

Under the evidence in the present case, the court considers that there was consideration for the deeds to Bessie and Myrtle Snook, and that these instruments were executed with reference to and for the purpose of carrying out an agreement specifying the characteristics of the estate intended to be created.

That the Supreme Court of Nebraska intended to confine the effect of its decision in the Mikulski case seems obvious. At page 376 of 139 Neb., at page 597 of 297 N.W., 137 A.L.R. 327, the court said: "Both the conveying clause and the habendum clause recite that the land is conveyed to the grantees as joint tenants and not as tenants in common. Furthermore, the deed recites, in effect, that it is the intent of the parties that in the event of the death of one grantee the other shall become invested with the fee simple title. That the parties to the deed intended to create a joint tenancy with right of survivorship as such estate was known at common law cannot logically be questioned. *Is a deed of such a character capable of conveying an estate in joint tenancy with right of survivorship as such estate existed at common law is the question involved.*" (Emphasis added.)

After thus stating the question, the court proceeded to consider the law and expressed its holding in the following language, 139 Neb. at page 380, 297 N.W. at page 598, 137 A.L.R. 327: "We hold that the deed in controversy was not capable of creating a joint tenancy as known at common law with right of survivorship in George Mikulski, Sr., and the defendant."

The court then went on to consider the evidence bearing upon the plaintiffs' contentions that the deed should be canceled on the ground that it had been procured by undue influence. After reviewing the evidence and the law upon this phase of the case, the court said, 139 Neb. at page 387, 297 N.W. at page 601, 137 A.L.R. 327, that: "We conclude from the record that the deed involved herein should be canceled on account of having been obtained through undue influence."

It is therefore evident that the Supreme Court's conclusion that the deed was void and of no effect rests upon the ground of undue influence. Note the following language in the concurring opinion of Justice Carter, 139 Neb. at page 409, 297 N.W. at page 602, 137 A.L.R. 327: "While it was

not necessary to a decision to determine the nature of the estate conveyed by the deed in the case before us, the writer has no hesitancy in answering the question posed by the dissent by stating that the deed before us, except for the undue influence found to exist, conveyed a half interest in the land to the wife."

Furthermore, the opinion in the Mikulski case leaves untouched the decisions in earlier Nebraska cases holding that the law of joint tenancy with right of survivorship exists in Nebraska, Sanderson v. Everson, 93 Neb. 606, 141 N.W. 1025, and that a right of survivorship in real estate may be created by contract without the intervention of a trustee, Neneman v. Rickley, 110 Neb. 446, 194 N.W. 447.

The opinion in Stuehm v. Mikulski, supra, even when given its fullest logical consequence, does not necessitate the conclusion to which this court is now invited by counsel.

A second, and more compelling, reason requiring this court to now hold that the decision in Stuehm v. Mikulski, supra, is inapplicable and should not be followed in the instant case lies in the fact that this decision does not represent the present law and public policy of the State of Nebraska.

The opinion in Stuehm v. Mikulski was filed on April 18, 1941. In that same year, the Legislature of the State of Nebraska, declaring the law and public policy of this state, enacted the Uniform Property Act, Laws 1941, c. 153, now R.S.Nebraska '43, Secs. 76-101 to 76-123, inclusive, and thereby immediately and in effect overruled and superseded the Supreme Court's decision in the Mikulski case. Section 18 of c. 153, Laws 1941, now R.S.Nebraska '43, Sec. 76-118, provides: "Any person or persons owning property which he or they have power to convey, may effectively convey such property by a conveyance naming himself or themselves and another person or persons, as grantees, and the conveyance has the same effect as to whether it creates a joint tenancy, or tenancy in common, or tenancy in partnership, as if it were a conveyance from a stranger who owned the property to the persons named as grantees in the conveyance."

Certain well-established principles, which govern the disposition of material issues in this case, may be reviewed here.

"In the absence of national legislation on a subject involving no federal question, a federal court will determine the question in accordance with the policy of the state, in which it sits, as found declared either in the statutes or decisions of the highest court of the state; for it is exclusively the province of the state to decide upon its own public policy; * * *." 6 Hughes Federal Practice, Jurisdiction & Procedure, § 3694.

When the question before a federal court is governed by state law, the court must follow the most recent pronouncement of that law and dispose of the case in the light of state law as it exists when the case is finally determined. Huddleston v. Dwyer, 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246; Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Groner v. United States ex rel. Snower, 8 Cir., 73 F.2d 126; Alameda County v. United States, 9 Cir., 124 F.2d 611. With reference to what state law must be applied in a federal court, the language of the Supreme Court in the Vandenbark case, 311 U.S. 538, at page 543, 61 S.Ct. 347, at page 350, 85 L.Ed. 327, is appropriate. The Court said: "While not insensible to possible complications, we are of the view that, until such time as a case is no longer sub judice, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court."

Where local law has been changed by the repeal of a state statute while a case is pending before a federal court, contentions and claims based upon the alleged failure of one's adversary to comply with requirements of the statute may not be considered. Interstate Hotel Company of Nebraska v. Remick Music Corporation, 8 Cir., 157 F.2d 744, 749. Using the language quoted in its opinion, the court said: " 'A change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law.' Ziffrin, Inc., v. United States, 318 U.S. 73, 78, 63

S.Ct. 465, 469, 87 L.Ed. 621; Carpenter v. Wabash Railway Co. et al., 309 U.S. 23, 26, 27, 60 S.Ct. 416, 84 L.Ed. 558; Texas Co. v. Brown et al., 258 U.S. 466, 474, 42 S.Ct. 375, 66 L.Ed. 721; Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 541, 542, 61 S.Ct. 347, 85 L.Ed. 327; Hines v. Davidowitz, 312 U.S. 52, 60, 61 S.Ct. 399, 85 L.Ed. 581; Standard Oil Co. of Kansas et al. v. Angle et al., 5 Cir., 128 F.2d 728, 730."

In case of conflict or inconsistency in the decisions of state courts, a federal court must accept and follow the state laws as announced in the most recent decision. Layne-Western Company v. Buchanan County, Missouri, 8 Cir., 85 F.2d 343; Mutual Life Ins. Co. of New York v. Cunningham, 8 Cir., 87 F.2d 842; Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488. This same rule should come into operation and apply when there is a conflict between state court decisions and the law of the state as subsequently fixed by the state Legislature.

Under these principles, this court must now dispose of the instant case in accordance with the law and public policy of the state of Nebraska as it now appears in the previously quoted provision of the Uniform Property Act, unless the saving clause of that Act necessitates a contrary result. Sec. 22 of c. 153, Laws 1941, now R.S. Nebraska '43, Sec. 76-122, provides: "This act shall not apply to acts which occurred, or to conveyances which became effective, before August 24, 1941."

No decision by a state court in Nebraska construing the saving clause, or any other part of the Uniform Property Act, has been found, and none is cited in the briefs. Hence the federal court must now exercise an independent judgment in interpreting the saving clause and other applicable provisions of the Act. MacGregor, Executor, v. State Mutual Life Assurance Co., 315 U.S. 280, 62 S.Ct. 607, 86 L.Ed. 864; Pryor v. National Lead Co., 8 Cir., 87 F.2d 461; Hineline v. Minneapolis Honeywell Regulator Co., 8 Cir., 78 F.2d 854; Davies v. Mills Novelty Co., 8 Cir., 70 F.2d 424. See also City of Texarkana v. Arkansas-Louisiana Gas Co., 306 U.S. 188, 59 S.Ct. 448, 83 L.Ed. 598.

This saving clause is procedural; it is a restriction imposed by the state legislature upon the jurisdiction of state courts by withdrawing from those courts the power to apply the Act to transactions which occurred before the Act became effective. The clause does not in any way affect the power or the duty of the federal court to follow and apply the law and public policy of the state of Nebraska as it now exists under the Uniform Property Act in disposing of the issues in this condemnation proceeding where the court is exercising jurisdiction conferred upon it by Congress, and, in passing upon the effect of the deeds in question, is dealing with the right to just compensation created by the Fifth Amendment. The jurisdiction of federal courts may not be abridged or impaired by state law. See Mechanical Appliance Co. v. Castleman, 216 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272; Woods Bros. Construction Co., Inc., v. Yankton County, S. D., 8 Cir., 54 F.2d 304; Davis v. Ensign-Bickford Co., 8 Cir., 139 F.2d 624; Sylvan Beach, Inc., v. Koch, 8 Cir., 140 F.2d 852.

Certain contentions which have been urged upon the court remain for brief comment before reaching the final conclusion in this case.

The respondent, Heaton, Administrator, and intervenors, Tyrrell and Hobson, advance the argument that the deeds are void because testamentary in character, and the Nebraska Supreme Court's decision in Pinkham v. Pinkham, 55 Neb. 729, 76 N.W. 411, is cited as authority in support of this argument. The deed there in question expressly provided, quoting from the opinion, 55 Neb. at page 731, 76 N.W. at page 411, that, "This deed is to take effect and be in full force from and after my death". This is sufficient to show the inapplicability of the Pinkham case, since the deeds to Bessie and Myrtle Snook manifest an intention that these instruments shall operate to create an estate in præsenti and convey a present interest. The contention that the deeds are invalid because the testimony shows that Mrs. Wilken intended these instruments as a substitute for a will,

and that they were not to take effect until her death, is not sustained by the record.

An abortive attempt is made to challenge the claims of Bessie and Myrtle Snook on the ground that the deeds are void for want of delivery. This matter is foreclosed by the stipulation of counsel in the Pre-trial Investigation and Order, from which the court now quotes: "It is stipulated * * * that said deed at that time was acknowledged and witnessed and delivered; that the same was recorded in the office of the Register of Deeds of Hall County on the date specified, * * *." This stipulation was made with reference to both deeds. But even if counsel were free to now repudiate these stipulations, such action would not alter the outcome of this case.

Under Nebraska law, whether there has been an effectual delivery of a deed is a matter of the grantor's intention, which is to be determined from all the circumstances in the case, and it is sufficient for a valid delivery that the grantor intended to divest himself of title, and that the instrument should operate as a muniment of title to take effect presently. Home Fire Ins. Co. of Omaha v. Collins, 61 Neb. 198, 85 N.W. 54; Smith v. Black, 143 Neb. 244, 9 N.W.2d 193. In the latter case, the Supreme Court, 143 Neb. at page 250, 251, 9 N.W.2d at page 197, said: "In the early case of Brittain v. Work, 13 Neb. 347, 14 N.W. 421, 422, it was stated: 'No particular act or form of words is necessary to constitute a delivery of a deed. Anything done by the grantor, from which it is apparent that a delivery was intended, either by words or acts, or both combined, is sufficient.'"

That a deed has been recorded by the grantor is prima facie evidence of delivery, Bowman v. Griffith, 35 Neb. 361, 53 N.W. 140; Gustin v. Michelson, 55 Neb. 22, 75 N.W. 123, and there may be a valid delivery of a deed notwithstanding that the grantee has no knowledge thereof before the grantor's death. Roepke v. Nutzmann, 95 Neb. 589, 146 N.W. 939.

The following excerpt from the text in Tiffany on Real Property, 3d Ed., Vol. 4, at pp. 217, 218, embodies apt reasoning:

"That the grantor has the instrument recorded, or leaves it with the proper official for record, has been frequently referred to as raising a presumption of delivery. This amounts in effect to a statement that such action on the part of the grantor shows, prima facie, an intention on his part that the instrument shall be legally operative. It is in the ordinary case difficult to see any object in leaving the instrument for record, unless it is intended that it shall operate as a conveyance, and the rule referred to appears to be founded in reason.

"In a few states only does this view appear to have been actually repudiated, and it is not always clear, in these states, why such an effect is denied to the grantor's conduct in this regard. * * * The presumption of delivery, based on the action of the grantor in having the instrument recorded, is recognized as being subject to rebuttal by evidence that he did not intend the instrument to operate as a conveyance."

The same authority also says, at p. 219:

"That the grantor, after having the instrument recorded, himself obtains it from the recording officer, instead of leaving it with the latter to be called for by the grantee, does not appear to have any proper bearing upon the question of the grantor's intention in having it recorded. * * * Conceding that the record of the instrument by the grantor is sufficient in itself to make a prima facie showing of delivery, it is not entirely clear why his subsequent retention of the instrument should be regarded as showing a different intention. That the grantor has the instrument recorded might properly, it is submitted, overcome any inference of nondelivery from his subsequent possession of the instrument, since, as before remarked, it is difficult to conceive of any object in having it recorded other than that it should be legally operative."

Objections have been made to certain evidence during the progress of the trial. All such evidence is received and considered. That which is incompetent and immaterial is disregarded.

The court holds, in conformity with the presently existing law and public policy of the state of Nebraska, that the

deeds whereby Phebc A. Wilken conveyed Tract No. 53 to herself and Bessie Snook, and Tract No. 54 to herself and Myrtle Snook, are valid. The money paid into the registry of the court by the government for the taking should be and is ordered distributed to said parties as the owners of these tracts.

Counsel for Bessie and Myrtle Snook is directed to prepare Findings of Fact, Conclusions of Law and Judgment in keeping with this Memorandum, and to submit them to opposing counsel for approval as to form. In the event of disagreement, the matter will be submitted to the court for determination.