**RUPPERT v. RUPPERT.**

No. 7788.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 15, 1942.

Mr. Abner Frank, with whom Mr. James Shenos was on the brief, both of Washington, D. C., for appellant.

Mr. J. Robert Esher, of Washington, D. C., for appellee. Mr. Michael J. Lane, of Washington, D. C., entered an appearance for the appellee.

Before STEPHENS, MILLER, and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice:

This is an appeal from a final decree of the District Court of the United States for the District of Columbia dismissing the complaint of the appellant (Mrs. Catherine Ruppert) in which she sought a limited divorce, separate maintenance, and an injunction restraining the appellee from prosecuting a divorce proceeding in Florida. In her complaint the appellant alleged marriage to the appellee, cruelty and desertion, and also that the appellee had instituted a divorce suit against her in Florida, notwithstanding the fact that the marital domicile of the parties was in the District of Columbia, for the purpose of defrauding her of her rights under the marital status. The appellee's answer to the complaint admitted the marriage, charged that desertion was by the appellant, and asserted

a final decree in Florida of absolute divorce.[1] After an initial hearing the trial court announced in a memorandum opinion that the appellant was entitled to the relief sought. The court made no findings of fact and stated no conclusions of law and entered no judgment. The appellee then filed a motion for a new trial upon the ground, among others, of newly discovered evidence. He asserted that a Virginia decree, antedating his marriage with the appellant, which purported to dissolve a marriage between the latter and one Kirke Kibler, was invalid for the reason that the appellant, who was plaintiff in the Virginia suit, had lived not in Virginia, but in the District of Columbia, during the year (required by Virginia law) prior to the filing of the Virginia action. Hence, urged the appellee at the motion for new trial, the appellant was still married to Kibler at the time of her marriage to the appellee; therefore the latter marriage was invalid and formed no foundation for the appellant's suit in the District Court. The appellee also asked leave, if the motion for new trial were granted, to amend his answer to the appellant's complaint so as to include a denial of the validity of his marriage to the appellant and a prayer for its annulment. The appellant countered, at the motion for new trial, with the charge that at the time of the Virginia suit the appellee knew that the appellant had been a resident of the District of Columbia and not of Virginia, but that nevertheless he encouraged the obtaining of the Virginia decree and was kept fully informed of every step taken in respect thereof.[2] The court granted the motion for new trial. The appellee then filed an amended answer admitting a ceremony of marriage with the appellant but asserting the invalidity thereof because of fraud by the appellant upon the Virginia court in respect of her residence and consequent invalidity of the Virginia decree purporting to divorce the

---

[1] The appellee's answer said nothing as to the cruelty.

[2] The appellee supported his motion for a new trial by affidavits and exhibits to the effect that the appellant had been a resident of the District of Columbia during the year prior to the filing of her suit for divorce in Virginia but that she had represented to the Virginia court that she had lived in Virginia during the required year. In his affidavit the appellee took oath also that he did not become aware of the appellant's asserted misrepresentations to the Virginia court until after the trial of the instant case. The appellant countered with affidavits to the effect that the appellee encouraged the divorce and that he had full knowledge of every aspect of the Virginia proceeding. The appellee filed an affidavit in reply admitting an acquaintance, prior to his marriage with the appellant, with the Virginia decree but denying his knowledge of the fraud upon the Virginia court and knowledge of the residence requirements in Virginia.

appellant and Kibler; and the appellee prayed that the marriage between himself and the appellant be held a nullity and void *ab initio*. At the new trial the issues were limited to the question of the validity of the Virginia decree; the evidence introduced followed the pattern of the affidavits of the parties under the motion for new trial with the addition of an admission by the appellant that she had never lived in Virginia but that she had represented a Virginia residence to the Virginia court and this notwithstanding a representation to the Supreme Court of the District of Columbia (in an action for divorce filed by her there on November 23, 1927, and dismissed by her December 8, 1927, just preceding institution of the Virginia suit, on December 19, 1927) that she was a resident of the District. At the conclusion of the hearing the District Court ordered the appellant's complaint dismissed upon the ground that at the time of her alleged marriage to the appellee she had been previously married and that such previous marriage had not been terminated by death or divorce, whereby the alleged marriage of the appellant and the appellee was null and void *ab initio*. This order contained a statement to the effect that the appellee's amended answer had set up, as a bar to the relief sought by the appellant, the nullity of the marriage of the appellant and the appellee by reason of the previous marriage of the appellant and the absence of termination of the same by death or divorce, and to the effect that the appellant had not denied that nullity. The order of dismissal was entered June 11, 1940.

Until June 24, 1940, the law in this jurisdiction had been declared to be that in annulment proceedings the doctrines of laches and estoppel were inapplicable. Simmons v. Simmons, 1927, 57 App.D.C. 216, 19 F.2d 690, 54 A.L.R. 75; Frey v. Frey, 1932, 61 App.D.C. 232, 59 F.2d 1046. But on June 24, 1940, Goodloe v. Hawk, 72 App.D.C. 287, 113 F.2d 753, holding that "the *general* public policy in this jurisdiction, as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given to such [irregular foreign] divorce decree," and thereby overruling Simmons v. Simmons and Frey v. Frey was decided. (This ruling was later followed in Saul v. Saul, July 21, 1941, 74 App.D.C. 287, 122 F.2d 64.) On June 21, 1940, the time within which the appellant in the instant case could serve a motion for a new trial and the time within which the trial court could grant a new trial upon its own initiative expired. Rule 59 (b) and (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Nevertheless, on June 28 the appellant served and filed a motion to vacate judgment and for new trial and restraining order (against disposition of property in the District of Columbia by the appellee), upon the ground that the order of June 11 was entered "as the result of mistake and inadvertence, the United States Court of Appeals for the District of Columbia having in the interim changed the principle of law upon which said judgment was based." This motion to vacate and for new trial and restraining order was heard and denied on June 28. On July 1, 1940, this appeal from the order of dismissal of June 11 was taken.

The appellant contends first that the trial court erred in granting a new trial on the ground of newly discovered evidence, and second that in view of Goodloe v. Hawk and Saul v. Saul the appellee is barred by estoppel and laches from attacking the validity of the Virginia decree; under each contention the appellant asks that the trial court's decision in her favor at the first trial be reinstated.

1. The first contention cannot be sustained. Under familiar principles the action of a trial court on a motion for a new trial is, subject to exceptions not here pertinent (for a discussion of such exceptions see Freid v. McGrath, Nov. 23, 1942, 76 U.S.App.D.C. 388, 133 F.2d 350), a matter within the court's discretion and its action will not be disturbed on appeal except for abuse. The question presented at the motion for a new trial was one of fact. While that question was presented on affidavits, the trial court had heard the parties at the first trial and was in a position therefore to judge of their credibility. We cannot say that the decision to grant the new trial was so far wanting in evidential support as to be arbitrary.

2. The second contention is in effect an assertion that the appellant is entitled to determination of this case on the basis of the law as declared in Goodloe v. Hawk and Saul v. Saul, and that on the record the appellee is barred by laches and estoppel from attacking the validity of the Virginia decree and that this court should so determine and in consequence forthwith or-

der reinstatement of the original decision in the appellant's favor.

■■ The appellant is entitled to a determination of this case on the basis of the law as declared in Goodloe v. Hawk and Saul v. Saul. With exceptions not here pertinent (where vested rights have intervened), the general principle is that a decision of a court of appellate jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law but that it never was the law. 14 Am.Jur., Court, § 130; American Sugar Refining Co. v. City of New Orleans, 5 Cir., 1902, 119 F. 691; Groner v. United States, 8 Cir., 1934, 73 F.2d 126; Chase v. American Cartage Co., 176 Wis. 235, 186 N.W. 598. At the time of the trial, in the Circuit Court of Milwaukee County, Wisconsin, of the case last mentioned—an action brought by an administrator for damages resulting from a decedent's death caused by an automobile collision—it had been held in Prideaux v. Mineral Point, 1878, 43 Wis. 513, 28 Am.Rep. 558, that the negligence of a driver would be imputed to a gratuitous passenger. In a special verdict the jury found that the defendant's negligence was the proximate cause of the death and assessed damages, but found also that the driver of the car in which the deceased was riding proximately contributed to produce her death, and upon this special verdict and in view of the rule of Prideaux v. Mineral Point the trial court entered judgment for the defendant. The plaintiff appealed. Pending the appeal the Supreme Court of Wisconsin in Reiter v. Grober, 1921, 173 Wis. 493, 181 N.W. 739, 18 A.L.R. 362, and in Brubaker v. Iowa County, 1921, 174 Wis. 574, 183 N.W. 690, 18 A.L.R. 303, overruled Prideaux v. Mineral Point. On the appeal it was held that the case should be disposed of under the law as determined by the later decisions. The court said:

". . . The judgment of a trial court that is appealed from cannot establish the law of the case. That must be established by this court in the decision upon the appeal. A lawful change in a judicial rule not amounting to a rule of property or its equivalent by a court of last resort becomes effective at once, and thereafter, upon subsequent appeals, operates alike upon acts coming within it whether occurring before or after its announcement. . . ." [citing authorities] [186 N.W. at 599]

The judgment was reversed and the cause remanded with directions to enter judgment for the plaintiff for the amount of damages assessed. Cf. also American Steel Foundries v. Tri-City Council, 1921, 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360. There a change of law pending appeal was by statute. The Supreme Court held that the case must be determined under the new statute. It said that "The complainant had no vested right in the decree of the District Court while it was subject to review."

But we cannot now determine on the present record that the appellee is barred by laches and estoppel from attacking the validity of the Virginia decree and in consequence forthwith order reinstatement of the original decision in the appellant's favor. Such a disposition of the case on appeal in Chase v. American Cartage Co., supra, was, it will have been noted, possible; but there, with a verdict against the defendant on the issue of negligence and an assessment of damages, and with imputed negligence out of the case, no further proceedings were necessary in the trial court. At the new trial of the instant case the court made no findings of fact and stated no conclusions of law upon the issues of laches and estoppel of the appellee to set up the invalidity of the Virginia decree. In this the trial court was not remiss because at the time of the new trial and of the order dismissing the appellant's complaint Simmons v. Simmons and Frey v. Frey, as pointed out above, reflected the law in this jurisdiction. Nevertheless there should be a determination by the court of first instance of the issues of laches and estoppel and findings of fact and conclusions of law thereon before this court exercises its appellate function. The pleadings may now be amended so as formally to introduce those issues. Rule 15 of the Federal Rules of Civil Procedure. Additional evidence may be introduced if the trial court deems it necessary.

■■ It is contended by the appellee that the doctrines of laches and estoppel can be applied only in an independent annulment proceeding, and not, as here, in a divorce action in which the invalidity of the marriage relied upon by the complainant is asserted, and its annulment sought, in an answer to the complaint. We think this contention not sound. It is true that the statutory estoppel established by D.C. Code (1940) § 30—104 is at the end of a

provision referring to "A proceeding to declare the nullity of a marriage." We print that section in the margin.[3] But § 30—101 recognizes that the nullity of a prohibited marriage may be shown even in a collateral proceeding. We print the pertinent parts of that section in the margin.[4] The marriage and divorce statutes in question, read as a whole, are, we think, not clear as to the intention of Congress as to whether the doctrines of laches and estoppel can be applied in both an independent annulment suit and in such an attack upon a marriage as is made in the instant case. That being true the statutes must be construed, and, under familiar rules of statutory construction, a reasonable intent must be attributed to Congress. We think that to construe the statutes as meaning that the doctrines of laches and estoppel can be applied only in an independent annulment proceeding and not in an action where the attack upon a marriage by a party thereto is made by way of defense to a divorce action would be improperly to conclude that Congress intended an unreasonable distinction. There seems to be no sensible reason why Congress would permit the defenses to be raised against annulment in the former type of proceeding and not in the latter.

■ It is further urged by the appellee that at the time the motion to vacate judgment was heard (June 28, 1940), it was called to the attention of the trial court that Goodloe v. Hawk had been decided (June 24), so that the fact that the doctrines of laches and estoppel were applicable in annulment proceedings was known to the court when it overruled the motion to vacate the judgment and for a new trial and restraining order. Therefore, it is contended, the overruling of the motion may be considered a determination against the appellant of the issues of laches and estoppel. But, as was pointed out above, this motion was too late (Freid v. McGrath, supra). Therefore the trial court must properly be taken to have overruled the motion on that ground alone and not to have passed upon the merits of the motion.

■ It is finally asserted by the appellee that even under Goodloe v. Hawk and Saul v. Saul laches and estoppel cannot be invoked by one confessedly guilty of a fraud which is asserted to have invalidated a marriage, and that therefore the appellant, having admitted her nonresidence in Virginia, cannot raise these defenses against the appellee's charge that fraud was committed on the Virginia court. But this contention involves the reach of Goodloe v. Hawk and Saul v. Saul and upon this we think we ought not pass in the absence of findings of fact on the questions of fraud on the Virginia court and of the participation of the appellant and appellee, respectively, in that fraud. It is true, as above pointed out, that the trial court stated in effect that the appellant had conceded the nullity of the Virginia decree. But there was no full finding of fact upon the subject of the asserted fraud by the appellant upon the Virginia court and no finding at all in respect of the appellee's asserted participation in that fraud.

We conclude that the case should be remanded to the trial court for findings of fact and conclusions of law upon the issues of fraud upon the Virginia court, the participation of the parties therein, and laches and estoppel, and for a further hearing if necessary to the end of arriving at such findings and conclusions.

Reversed and remanded.

RUTLEDGE, Associate Justice (concurring in the result).

---

[3] "A proceeding to declare the nullity of a marriage may be instituted in the case of an infant under the age of consent by such infant, through a next friend, or by the parent or guardian of such infant; and in the case of an idiot or lunatic by next friend. But no such proceedings shall be allowed to be instituted by any person who, being fully capable of contracting a marriage, has knowingly and wilfully contracted any marriage declared illegal by the foregoing sections. (Mar. 3, 1901, 31 Stat. 1392, ch. 854, § 1286; June 30, 1902, 32 Stat. 543, ch. 1329.)"

[4] "The following marriages are prohibited in the District of Columbia and shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings, namely:

\* \* \*

"Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce. (Mar. 3, 1901, 31 Stat. 1391, ch. 854, § 1283.)"

I think the record shows, as a matter of law, that appellee encouraged appellant to procure the Virginia divorce, entered into the marriage and lived with her as his wife for ten years, all with full knowledge of all the facts which operate to make the divorce invalid. He further acknowledged the validity of the marriage by procuring a divorce in Florida and by the manner in which his defense in this cause was conducted up to the time of the motion for a new trial. Then he filed an affidavit which in my opinion merely denies that he knew the legal effect of these facts, not that he was ignorant of the facts themselves, prior to the time appellant testified at the first trial.

That apparently was true also of appellant, who undoubtedly followed advice of counsel in the Virginia proceedings. She too knew the facts which invalidate the divorce, but there is nothing to show she knew they had this effect until the matter was raised in the motion for a new trial. The inference is rather to the contrary, since it is hardly to be presumed she would incur knowingly the double risks of perjury and bigamy. The inference derives further support from the fact that appellee took appellant and a copy of the Virginia decree, which he admits having read and which recited her residence in Virginia, to a priest who procured dispensation for their marriage.

Regarding the facts of record in this light, I think both appellant and appellee were more the victims of a legal system of divorce at war with social convention than intentional and deliberate criminals or violators of law. Whether therefore they be regarded so or as in pari delicto, I think the doctrine of laches and estoppel as announced in Goodloe v. Hawk, 1940, 72 App.D.C. 287, 113 F.2d 753, and followed in Saul v. Saul, 1941, 74 App.D.C. 287, 122 F.2d 64, are applicable in these facts. It is not necessary now to determine whether the same result is required by D.C.Code (1940) § 30—104, though obviously the policy there declared is in the same direction.

Since however Judge Stephens does not agree that the case should be decided here in the absence of further findings and conclusions by the trial court, I concur in reversing and remanding it to that court for further proceedings in accordance with the requirements stated in his opinion.

MILLER, Associate Justice (dissenting).

At the same time and in the same pleadings, appellant (1) admitted that the Virginia decree had been fraudulently procured and was a nullity and (2) alleged that appellee was a guilty participant in the fraud. Much earlier than that, on the first trial, she had given testimony which convicted her of that fraud. The result was that when the possible participation of appellee in the fraud—which he has consistently denied—was first brought to the attention of the trial judge the latter was fully informed of the fraud and of the fact that appellant had admitted the nullity of the Virginia divorce. The majority opinion says that under such circumstances the trial judge was, nevertheless, required to try the issues of appellee's participation in the fraud and of laches and estoppel.

I am unable to reach that conclusion. At most, the requirement of the Code [1]—that a proceeding to declare the nullity of marriage may not be *instituted* by a guiltily participating party—operates to bar the *disclosure* of the fraud which nullifies the subsequently contracted marriage. The Code does not provide that when a party to such a marriage herself discloses the fraud and admits the nullity, she may at the same time restore its vitality by charging that the other party participated in the fraud. In view of these circumstances, I see no reason for remanding the case and no useful purpose which can be served by doing so. No other finding or conclusion is possible than that fraud was practiced upon the Virginia court. This being true the questions of laches and estoppel, or of participation by appellee in the fraud, are immaterial and whatever findings or conclusions may be made thereon should have no effect upon the decision of the case.

The question presented by appellant for the decision of the trial court was whether she was entitled to a divorce, alimony, maintenance and support. In order to sustain her prayer she was required to prove a valid, existing marriage between herself and appellee. This she failed to do. The trial court denied her prayer for relief, upon her own showing that no valid marriage between herself and appellee existed. No other course was open to it and no other course would have been open to it whatever the result might have been of a trial of

---

[1] D.C.Code (1940) § 30—104.

the issue of appellee's participation in fraud or of his laches.

The majority opinion misconceives the purpose of the Code provisions. The applicable substantive law is declared by Section 30—101 [2] as follows: "The following marriages are prohibited in the District of Columbia and *shall be absolutely void ab initio, without being so decreed,* and their nullity may be shown in any collateral proceedings, namely: * * * Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce." [Italics supplied] In the present case, the Virginia divorce decree being a nullity, the marriage of appellant and appellee was a nullity, void ab initio, without being so decreed. When the facts came to the attention of the trial judge he had no alternative but to respect the clearly declared substantive law and deny the relief for which appellant prayed. Section 30—104,[3] upon which appellant relies, declares a mere rule of *procedural* or *adjective* law. Its only effect is to prevent a guilty spouse who knowingly entered into an illegal marriage from initiating a proceeding to declare the nullity of that marriage. Its effect may be in some cases to preserve the vitality of a marriage which, if it were subjected to challenge, might be declared void. If so, this results from the fact that the nullity is never brought to the attention of the court. But its effect is not to change the substantive law, or to require the trial judge to disregard admitted fraud and undenied nullity.

Goodloe v. Hawk [4] and Saul v. Saul [5] do not require a different result. If appellant had consistently maintained, as was done in both those cases, that no fraud had been practiced in procuring the Virginia decree, then there would have been some point in permitting proof of appellee's participation in the procurement of that decree. If such participation had then been proved, the court would have been justified in refusing to permit him to offer proof of invalidity of the Virginia decree. Under such circumstances, prima facie proof of a valid decree of divorce between appellant and Kirke Kibler would have stood unchallenged. But in view of her admission that she had never lived in Virginia; that her representation to the Virginia court was false—with the inescapable result that the decree was procured by fraud—there was no conflict of evidence to be resolved and no point in determining whether appellee participated in procuring the Virginia decree or had knowledge of its character. In other words, whatever may be the virtue of a plea of laches and estoppel when properly presented, under circumstances contemplated by the law, it cannot cure admitted fraud or restore the vitality of an admittedly invalid decree.

In Goodloe v. Hawk, this court was careful to specify that the Virginia decree there in dispute would be recognized in the District of Columbia "if it is valid under the law of Virginia, i. e., if she was domiciled in and a bona fide resident of Virginia as required by the divorce statute there, and if no fraud was committed on the Virginia court * * *." [6] And in that case we said, in distinguishing earlier decisions of this court: "Doubtless there are circumstances wherein a *particular* public policy requires annulment of a marriage without regard to the guilt or innocence of the parties affected and many of the cases rejecting the laches or estoppel doctrines involve such situations. The Simmons and Frey cases may indicate that a prior divorce representing active fraud on the foreign tribunal must, as a matter of public policy, be so regarded. It will be recalled in this connection that as regards the divorce here challenged no fraud was practiced on the Virginia court respecting the appellee's bona fide residence there nor the fact of her then husband's desertion." [7] Again, in Saul v. Saul, we carefully eliminated the element of fraud, in the following language: "Finally, there is nothing in the findings or conclusions of the trial court which sustains the charge of fraud. On the contrary, all of their implications are to the opposite effect. That is true, though their conclusion concerning Gardner's domicil may be at variance with that of the Tennessee court. It follows that the order for the notice, and therefore the notice itself, may have been made and given erroneously, but neither was vitiated by fraud. Something more than mere error must be shown, in attack upon a foreign

---

[2] D.C.Code (1940).
[3] Ibid.
[4] 72 App.D.C. 287, 113 F.2d 753.
[5] 74 App.D.C. 287, 122 F.2d 64.

[6] 72 App.D.C. 287, 289, 113 F.2d 753, 755.
[7] 72 App.D.C. 287, 291, 292, 113 F.2d 753, 757, 758.

judgment, to deprive it of force and effectiveness."[8]

In both Goodloe v. Hawk and Saul v. Saul, the trial court, in the exercise of its discretion and upon conflicting evidence, found that no fraud had been practiced in procuring the disputed decrees, because in each case the wife had been a bona fide resident of the state. In each case we upheld the trial court's exercise of discretion. In each case the application of the doctrine of estoppel against the husband had the effect, merely, of refusing to permit his evidence to go into the balance against the prima facie presumption of validity indulged in favor of the second marriage and the supporting testimony presented by the wife. In the present case, the court, in the exercise of its discretion and upon undisputed evidence of fraud, refused to recognize the Virginia decree. We are asked now, therefore, not to uphold the trial court's exercise of discretion as we did in our earlier decisions, but to declare that it was abusively exercised; to require that the trial judge shut his eyes to the facts and give full faith and credit to a decree which, upon its proponent's own showing, was procured by fraud.

But what the situation might have been if appellant had denied fraud and challenged the right of appellee to raise the issue is now immaterial. The trial court was fully advised; its attention was called to our intervening decision, and there was ample basis for its decision. To require it now to rehear the matter upon another theory which would test the good faith of appellee, or his possible participation in the fraud practiced upon the Virginia court, could not remove from the record appellant's own testimony and her own admissions establishing fraud. It is to be noted in this connection that while the preamble of the order of the trial court recited the fact of nullity of the marriage of appellant and appellee, it did so because, as it pointed out, *the nullity was undenied.* And it is to be noted further that the order proper did not declare the nullity of the marriage. The court merely denied the relief prayed by appellant, in her complaint, and dismissed her suit.

The majority opinion oversimplifies the issue of public policy. The primary public policy of the District, which is here involved, in view of the applicable statute which declares the substantive law,[9] is the proscription of bigamous marriages. This is the public policy which was effectuated by the decision of the trial court. Section 30—104, which declares a limiting rule of adjective law, reveals a secondary public policy, namely, to prevent attack upon an existing second marriage by a person of full capacity who guiltily participated in its consummation. This secondary public policy is the one which we had in mind in Goodloe v. Hawk [10] and Saul v. Saul.[11] There is no reason to suppose that Congress intended, by enacting Section 30—104, to destroy or repeal Section 30—101. And there is no justification for so widely expanding the application of Section 30—104 upon the theory that the public policy of the District requires it. On the contrary, public policy requires that it shall be strictly construed as Congress intended it to be construed, merely as a procedural limitation upon Section 30—101. If the majority opinion is the law where will the line be drawn? Barefaced fraud, brazen admission of fraud and collusion between guilty parties may be openly alleged and proved without possibility of control; and with resulting emasculation of Section 30—101. I participated in the decision of Goodloe v. Hawk, but I did so without any intention that the law there stated should apply to such facts as those of the present case.

[8] 74 App.D.C. 287, 291, 122 F.2d 64, 68.
[9] D.C.Code (1940) § 30—101.

[10] 72 App.D.C. 287, 113 F.2d 753.
[11] 74 App.D.C. 287, 122 F.2d 64.