**Mary Griemsman SEARS, Appellant,**

v.

**John C. SEARS, Appellee.**

No. 2666.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 26, 1960.

Decided Dec. 30, 1960.

8. Bryant v. Mathis, 107 U.S.App.D.C. 339, 278 F.2d 19; Rankin v. Shayne Brothers, Inc., 98 U.S.App.D.C. 214, 234 F.2d 35.

---

Frederick A. Ballard, Washington, D. C., with whom John W. Kern, III, Washington, D. C., was on the brief, for appellant.

John Alexander, Washington, D. C., with whom Walter W. Johnson, Jr., Washington, D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

HOOD, Associate Judge.

This appeal is by a wife from a judgment granting her husband's complaint for annulment of their marriage and denying her counterclaim for separate maintenance.

When appellant first met appellee in New Jersey in 1942, he had a wife and a young daughter and had been married for thirteen years. About a year later they began to see each other socially, became intimate, and in 1944 he separated from his wife. Appellant and appellee wished to marry but the obstacle to this was the fact that he had a wife who refused to participate in a divorce proceeding as he suggested. Seeking to overcome this obstacle, appellee, with full knowledge of appellant, consulted a Mexican attorney in New York. That attorney suggested a Mexican "mail order divorce," indicating that such a divorce would probably be effective unless questioned. He cautioned appellee that if he wished to remarry it would be wise to be married in some jurisdiction which did not question prior divorces too closely, suggesting Connecticut or Maryland. Appellee informed appellant of what he had been told and they decided that he should authorize the Mexican attorney to proceed with the divorce.

Although neither appellee nor his wife had ever been in Mexico, a civil court of that country on June 27, 1944, granted appellee what purported to be an absolute divorce. When he received the decree by mail he and appellant determined to marry in reliance on the divorce, and on July 26, 1944, they went through a marriage ceremony in Greenwich, Connecticut. They then lived as man and wife in New York, later in Pennsylvania, and in 1954 moved to the District of Columbia. Childless, they continued to live together here until January 1959, when, as a result of domestic discord, appellee separated from appellant. Six months later he brought this action for annulment of his marriage to appellant on the ground that the Mexican divorce was void. She opposed and sought separate maintenance. Appellee's first wife, who continues to reside in New Jersey, has never sought a divorce from him.

In an extensive and thoughtful memorandum the trial court reviewed the authorities and concluded that the defenses of estoppel and laches should not preclude annulment of the Connecticut marriage. Accordingly the court granted the annulment and denied appellant's claim for separate maintenance. Making no claim that the Mexican divorce decree possessed any validity,[1] appellant urges that appellee should be estopped from asserting its invalidity.

Prior to 1940 it was the rule in this jurisdiction that estoppel and laches had no ap-

---

1. A Mexican mail order divorce is "null and void." Anderson v. Anderson, 84 U.S.App.D.C. 231, 172 F.2d 280. "It is almost a matter of common knowledge that the prevalent 'mail order' Mexican divorce is a nullity." Tonti v. Chadwick, 1 N.J. 531, 64 A.2d 436, 438. "The legal profession and, indeed, the general public now recognizes the valueless character of mail order divorces." Caldwell v. Caldwell, 298 N.Y. 146, 81 N.E.2d 60, 63. See also Poltz v. Poltz, 15 Conn. Sup. 75.

plication in an annulment action brought on the basis of a prior invalid divorce.[2] In that year, however, it was held in Goodloe v. Hawk, 72 App.D.C. 287, 291, 113 F.2d 753, 757, that "it can no longer be said that public policy requires non-recognition of all irregular foreign divorces," and that "the *general* public policy in this jurisdiction, as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given such divorce decrees"; but the court added the following: "Doubtless there are circumstances wherein a *particular* public policy requires annulment of a marriage without regard to the guilt or innocence of the parties * * *." See also Saul v. Saul, 74 App.D.C. 287, 122 F. 2d 64, and Ruppert v. Ruppert, 77 U.S.App. D.C. 65, 134 F.2d 497.

The foregoing cases are distinguishable from the present one on several grounds. They involved what in Goodloe were termed "irregular" divorces. Here the Mexican divorce was not irregular; it was wholly null and void. Also, in those cases, at least one of the parties personally appeared in the state granting the decree, and thus the decrees were presumptively valid. Here there was no appearance, no semblance of jurisdiction, and consequently no presumption of validity. And, finally, in those cases the parties were seeking to avoid decrees which had been obtained by fraudulent misrepresentations to the courts granting the decrees and in which fraud they had participated. Here no fraud, by way of misrepresentation as to residence, domicile or otherwise, was practiced upon the Mexican Court. However else appellee's conduct may be characterized, it cannot be called fraudulent, for neither he, his wife, his prospective wife, nor the Mexican Court was deceived thereby.

■ It is our opinion that neither laches nor estoppel bar granting the annulment in this case. The Mexican divorce was a nul-

lity and appellee's marriage to his first wife remains undissolved. Certainly our public policy is against bigamous marriages and the Connecticut marriage between appellant and appellee falls squarely within Code 1951, § 30–101, which declares "absolutely void ab initio, without being so decreed," a marriage contracted by a party whose "previous marriage has not been terminated by death or a decree of divorce." Denial of an annulment would give some operative effect to the Mexican divorce and we think it deserves none.

■ Conceding her full knowledge of and acquiescence in the Mexican divorce proceeding, appellant urges that when parties are in *pari delicto* the court should refuse relief to either. But appellant is asking for relief. She seeks a denial of annulment and the award of separate maintenance to her. Such an award could be given only by recognizing her marriage as legal, and this cannot be done. Under somewhat similar circumstances, it was held in New Jersey that the husband should be denied an annulment and the wife denied maintenance. Tonti v. Chadwick, 1 N.J. 531, 64 A.2d 436. This procedure does not appeal to us. It leaves open the question which in all probability must eventually be decided, namely, are the parties legally married? We prefer the procedure adopted in New York of squarely holding the marriage void, granting the annulment, and denying maintenance. Caldwell v. Caldwell, 298 N.Y. 146, 81 N.E.2d 60.

This does not mean that we commend the conduct of appellee, but the fact is that appellant's conduct has little to commend it. On this feature of the case the trial court said:

"At first blush, this ruling may appear to be unduly harsh upon the defendant who has lived with the plaintiff, and relied upon him for her primary support, for fifteen years. How-

2. Frey v. Frey, 61 App.D.C. 232, 59 F.2d 1046; Simmons v. Simmons, 57 App.D.C. 216, 19 F.2d 690, 54 A.L.R. 75.

ever, the evidence in this case clearly establishes that neither the plaintiff nor the defendant herein deserves the sympathy of a court of equity. They deliberately and wilfully conspired to violate the law by seeking and obtaining an illegal divorce decree to dissolve plaintiff's first marriage, and, even in the face of warnings that the validity of the decree they obtained was questionable, they sought deliberately to find a jurisdiction which, in issuing them a license to marry, would not inquire too deeply into the termination of the plaintiff's former marriage. Both parties had notice that the purported mail order decree was something less than reliable, but in their anxiety to live together in aura of respectability, they took the chance and were married in Connecticut. Having for fifteen years enjoyed the dubious fruits of a meretricious relationship, surreptitiously conceived, illegally commenced, and invalidly maintained, discord between the parties entered the picture."

There is an implication in Anderson v. Anderson, 84 U.S.App.D.C. 231, 172 F.2d 280, that one who obtains a Mexican mail order divorce and thereafter remarries, may have the second marriage annulled only on proof that the Mexican decree was obtained in good faith. We think, however, that case went no further than to indicate that there may be circumstances where an innocent spouse may invoke estoppel against the other spouse who in bad faith had obtained a mail order divorce. Here there is no innocent party.

■ Appellant also argues that, aside from the equitable principles of laches and estoppel, appellee was barred from bringing suit for annulment by our Code, § 30–104. This and its companion sections, as far as here applicable, are set forth in the margin.[3] It is true that in Ruppert v. Ruppert, 77 U.S.App.D.C. 65, 134 F.2d 497, both in the majority opinion and the concurring and dissenting opinions there are discussions of the "statutory estoppel" of Section 30–104, although such estoppel was not there applied and there was no holding that it does apply in this type of case. We are inclined to the view that the section was correctly interpreted in Rhodes v. Rhodes, 68 App.D.C. 313, 314, 96 F.2d 715, 716, certiorari denied 305 U.S. 632, 59 S.Ct. 99, 83 L.Ed. 405, where it was said: "For example, the District of Columbia Code, sections 1–3, Tit. 14, D.C.Code 1929, classifies some marriages as void and others as void-

---

3. 30–101. "The following marriages are prohibited in the District of Columbia and shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings, namely:

　　*　　*　　*　　*　　*

"Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce."

30–102. "Any of such marriages may also be declared to have been null and void by judicial decree."

30–103. "The following marriages in said District shall be illegal, and shall be void from the time when their nullity shall be declared by decree, namely:

"First. The marriage of an idiot or of a person adjudged to be a lunatic.

"Second. Any marriage the consent to which of either party has been procured by force or fraud.

"Third. Any marriage either of the parties to which shall be incapable, from physical causes, of entering into the married state.

"Fourth. When either of the parties is under the age of consent, which is hereby declared to be eighteen years of age for males and sixteen years of age for females."

30–104. "A proceeding to declare the nullity of a marriage may be instituted in the case of an infant under the age of consent by such infant, through a next friend, or by the parent or guardian of such infant; and in the case of an idiot or lunatic by next friend. But no such proceedings shall be allowed to be instituted by any person who, being fully capable of contracting a marriage, has knowingly and wilfully contracted any marriage declared illegal by the foregoing sections."

able, *and in the latter case prohibits*—under some circumstances—the bringing of actions to declare them void. Section 4, Tit. 14, D.C.Code 1929." (Emphasis added)

We say this for the reason that we cannot believe that one whose previous marriage has not been terminated by death or a decree of divorce—which is the case here—can be encompassed in Section 30–104 as one "fully capable of contracting a marriage." If so, how were Simmons and Frey granted annulments.[4] Those cases were later modified, but they were modified on the grounds of the "salutary principles of laches or estoppel" and not on the basis of Section 30–104. And if that Section has any application in a case of this sort, how was Oliver's marriage declared null and void?[5] He was at least as capable of contracting a marriage as was appellee here, and furthermore an innocent child was there involved.

Our conclusion is that the judgment of the trial court was correct and must be affirmed.

Affirmed.

4. Note 2 supra.

5. Oliver v. Oliver, 87 U.S.App.D.C. 334, 185 F.2d 429.