944

Louise SAFARIK and Richard P. DeSmet, Appellants,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Raymond J. HANSEN et al., Appellants,

v.

Stewart L. UDALL, Secretary of the Interior, et al., Appellees.

Samuel GARY, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

John J. KING, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Robert SCHULEIN, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Betty J. LEWIS et al., Appellants,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Duncan MILLER, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

Nos. 16646–16651, 16654.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 12, 1962.

Decided June 7, 1962.

Mr. Thomas F. McKenna, Santa Fe, N. Mex., with whom Mr. Richard H. Speidel, Washington, D. C., was on the brief, for appellants in Nos. 16,646 and 16,647. Mr. Joseph A. Sommer, Santa Fe, N. Mex., also entered an appearance for appellants in Nos. 16,646 and 16,647.

Mr. James S. Holmberg, Denver, Colo., of the bar of the Supreme Court of Colorado, pro hac vice, by special leave of court with whom Mr. Richard H. Speidel, Washington, D. C., was on the brief, for appellants in Nos. 16,648, 16,649, 16,650 and 16,651.

Mr. Chester C. Shore, Washington, D. C., for appellant in No. 16,654.

Mr. Raymond N. Zagone, Atty., Dept. of Justice, Washington, D. C., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of court, with whom Asst. Atty. Gen., Ramsey Clark, Messrs. Roger P. Marquis and Thomas L. McKevitt, Attys., Dept. of Justice, Washington, D. C., were on the brief, argued for appellee Udall in Nos. 16,646, 16,647 and 16,654, and submitted on the brief for appellee Udall in Nos. 16,648, 16,649, 16,650 and 16,651. Messrs. S. Billingsley Hill and Hugh Nugent, Attys., Dept. of Justice, Washington, D. C., also entered appearances for appellee Udall.

Mr. Henry T. Rathbun, Washington, D. C., for appellee Robert S. Light, and certain other appellees in No. 16,647.

Mr. Samuel W. McIntosh, Washington, D. C., for appellees Coll and Fasken in No. 16,647.

Mr. Samuel W. McIntosh, Washington, D. C., filed a brief on behalf of Robert B. Laughlin, and others, as amici curiae, urging affirmance.

Before PHILLIPS, Senior United States Circuit Judge for the Tenth Circuit,* EDGERTON and BAZELON, Circuit Judges.

PHILLIPS, Circuit Judge.

In each of these cases relief by declaratory judgment was sought with respect to the denial by the Secretary of the Interior of applications made by appellants for oil and gas leases under the Mineral Leasing Act of 1920, 41 Stat. 437, 30 U.S.C.A. § 181 et seq. In each case a judgment was entered granting the Secretary's motion for summary judgment, denying a cross-motion for summary judgment and dismissing the action. These appeals followed.

Section 17 of the Mineral Leasing Act of 1920, 41 Stat. 437, 443, as amended by the Acts of August 8, 1946, 60 Stat. 950, 951, and July 29, 1954, 68 Stat. 583, 584, 30 U.S.C.A. § 226, reads in part as follows:

"All lands subject to disposition under this Act which are known or believed to contain oil or gas deposits may be leased by the Secretary of the Interior. * * * Leases issued under this section shall be for a primary term of five years and shall continue so long thereafter as oil or gas is produced in paying quantities.

\* \* \* \* \* \*

"Upon the expiration of the initial five-year term of any noncompetitive lease maintained in accordance with applicable statutory requirements and regulations, the record titleholder thereof shall be entitled to a single extension of the lease, unless then otherwise provided by law, for such lands covered by it as are not on the expiration date of the lease withdrawn from leasing under this section. * * * A noncompetitive lease, as to lands not within the known geologic structure of a producing oil or gas field, shall be extended for a period of five years and so long thereafter as oil or gas is produced in paying quantities. A noncompetitive lease, as to lands within the known geologic structure of a producing oil or gas field, shall be extended for a period of two years and so long thereafter as oil or gas is produced in paying quantities. * * *"

Section 30(a) of the Mineral Leasing Act of 1920, added by the Act of August 8, 1946, 60 Stat. 950, 955, as amended by the Act of July 29, 1954, 68 Stat. 583, 585, 30 U.S.C.A. § 187a, provided in pertinent part as follows:

"Notwithstanding anything to the contrary in section 30 hereof, any

---

* Sitting by designation pursuant to § 294(d), Title 28 U.S.Code Annotated.

oil or gas lease issued under the authority of this Act may be assigned or subleased, as to all or part of the acreage included therein, subject to final approval by the Secretary and as to either a divided or undivided interest therein, to any person or persons qualified to own a lease under said sections, and any assignment or sublease shall take effect as of the first day of the lease month following the date of filing in the proper land office of three original executed counterparts thereof * *. Any partial assignment of any lease shall segregate the assigned and retained portions thereof, and as above provided, release and discharge the assignor from all obligations thereafter accruing with respect to the assigned lands; and such segregated leases shall continue in full force and effect for the primary term of the original lease, but for not less than two years after the date of discovery of oil or gas in paying quantities upon any other segregated portion of the lands originally subject to such lease. Assignments under this section may also be made of parts of leases which are in their extended term because of any provision of this Act. The segregated lease of any undeveloped lands shall continue in full force and effect for two years and so long thereafter as oil or gas is produced in paying quantities."

Part 192 of Title 43 of the Code of Federal Regulations sets forth the regulations pertaining to oil and gas leases.

43 C.F.R. § 192.140 (1954 ed.) at all times here material provided in pertinent part:

"§ 192.140 *Assignments or transfers of leases or interests therein.* Leases may be assigned or subleased as to all or part of the leased acreage and as to either a divided or undivided interest therein to any person or persons qualified to hold a lease. Subject to final approval by the Bureau of Land Management,

assignments or subleases shall take effect as of the first day of the lease month following the date of filing in the proper land office of all the papers required by §§ 192.141 and 192.142. * * * "

43 C.F.R. § 192.144 (1954 ed.) provides:

"§ 192.144 *Extension of leases segregated by assignment.* Any lease segregated by assignment, including the retained portion, shall continue in effect for the primary term of the original lease, or for two years after the date of discovery of oil or gas in paying quantities upon any other segregated portion of the original lease, whichever is the longer period.

"(b) Undeveloped parts of leases assigned out of leases which are in their extended term under any provision of the act shall continue in effect for two years, and so long thereafter as oil or gas is produced in paying quantities."

It will be observed that § 30(a) of the Mineral Leasing Act of 1920, as amended, provided that oil and gas leases may be assigned in whole or in part and that any assignment "shall take effect as of the first day of the lease month following the date of filing in the proper land office of three original executed counterparts thereof"; and that upon assignment the segregated lease of any undeveloped lands "shall continue in * * * effect for two years, and so long thereafter as oil or gas is produced in paying quantities."

On June 4, 1957, as Associate Solicitor of the Department of the Interior, in a memorandum opinion, held an assignment filed in the proper land office in accordance with § 30(a), as amended, supra, during the twelfth month of the last year of the extended term of a lease would effect a two-year extension of the extended term of the lease.

The applications for oil and gas leases made by the appellants and rejected by the Secretary embraced lands included in

leases which had been made under the Mineral Leasing Act of 1920. All of such leases were for an original five-year term,[1] with a renewal right for an additional five years. Many of the lessees under such leases are not parties to any of these actions. With two exceptions, assignments of such leases had been made during the twelfth month of the last year of their extended terms, respectively, and prior to August 29, 1958, and the Bureau of Land Management had approved such assignments and recognized them as extending such leases for two years and reflected that fact on its records. In the two exceptions noted, the leases had been assigned prior to the last month of the extended terms of the leases.

In an appeal in the case of Franco Western Oil Company, 65 I.D. 316, decided August 11, 1958, the Secretary overruled the decision of June 4, 1957, of the Associate Solicitor and held that an assignment in order to effect a two-year extension of an oil and gas lease had to be made before the twelfth month of the last year of the extended term of the lease. Under such construction, the maximum extension obtainable was for one year and eleven months.

Thereafter, the Acting Director of the Bureau of Land Management requested clarification of the decision of August 11, 1958, insofar as it might affect noncompetitive oil and gas leases extended under the construction of § 30(a) of the Mineral Leasing Act of 1920, as amended, supra, reflected in the opinion of the Associate Solicitor of June 4, 1957.

On September 30, 1958, the Secretary of the Interior handed down a supplemental decision in which he recited the fact that many partial assignments of leases had been filed during the last month of the extended-lease term in reliance on the opinion of June 4, 1957, and had been recognized by the Bureau of Land Management as effecting extensions of the terms of such leases for two years, that at the time of the decision of August 11, 1958, other leases in the twelfth month of their extended term were held by lessees who intended to make partial assignments thereof on the strength of the opinion of June 4, 1957, and who, under that opinion, had until August 29, 1958, within which to file such assignments and that a retroactive application of the decision of August 11, 1958, would adversely affect parties who had acted in reliance on such opinion and would deprive them of rights and interests they would be entitled to thereunder.

In such supplemental decision the Secretary stated that it had not been the practice of the Department of the Interior to give its decisions retroactive effect "so as to disturb actions taken in other cases on an overruled interpretation of the law" and referred to a number of decisions in which the Department had overruled former decisions and avoided nullifying actions taken under such earlier decisions by giving its later decisions only prospective operation. In the supplemental decision, the Secretary held that partial assignments of leases made in the last month of the extended lease terms, if filed on or before August 29, 1958, would be treated as valid and as effecting two-year extensions of the terms of such leases.

While the period between the Solicitor's opinion of June 4, 1957, and the decision of the Secretary of the Interior of August 11, 1958, overruling such prior opinion was not long, in that interim persons, acting in reliance on the Solicitor's opinion and the uniform practice of the Bureau of Land Management during that interim of following such opinion, approving assignments of leases made during the last month of the lease term and reflecting extensions of such leases on its records, had made assignments of hundreds of leases affecting thousands of persons and no doubt in many cases lessees and assignees had expended sub-

---

1. Since the Mineral Leasing Act Revision of 1960, 74 Stat. 781, 782, such leases have a primary term of ten years.

stantial sums in exploration and development prior to August 11, 1958.

In Nos. 16,646 and 16,647 the appellants sought a judgment declaring that their offers to lease should not have been rejected on the ground that the lands embraced in the offers were included in existing oil and gas leases extended by partial assignments and that the appellants were entitled to leases "based upon" their offers.

In Nos. 16,648, 16,649, 16,650 and 16,651 appellants prayed that the court declare partial assignments of prior oil and gas leases filed during the last month of the last year of the lease terms were ineffective and that such prior leases had expired at the end of their terms by operation of law; and that the court reverse the decisions of the Secretary of the Interior denying them relief on the ground that the lands sought to be released were subject to prior leases and direct the Secretary to issue leases for the lands embraced in their offers.

In No. 16,654 the appellant prayed that the court set aside the decisions of the Secretary of the Interior rejecting his offers to lease and direct the Secretary to cancel all leases conflicting with his offers to lease and to award leases to appellant.

In No. 16,647 the record holders or assignees of four leases were permitted to intervene as parties defendant.

A large number of lawyers representing clients interested in the litigation filed, with leave of court, a consolidated brief as amici curiae in which they urged that the Secretary's supplemental decision of September 30, 1958, be sustained.

The primary question presented in these cases is whether, under the existing facts and circumstances, the Secretary had authority to make the construction of § 30(a), as amended, supra, reflected in his decision of August 11, 1958, operate only prospectively.

It should be kept in mind that these are not cases where private persons are asserting rights to the detriment of the United States based on claims in the nature of an estoppel predicated on the actions of public officials, rather, they are cases where to give retroactive effect to the Secretary's decision of August 11, 1958, would give to the members of one group of private persons unfair and inequitable advantages to the detriment of members of another group of private persons and where such retroactive effect is not necessary to protect the interests of the United States.

Neither § 30(a), as amended, supra, nor any other provision of the Mineral Leasing Act of 1920, expressly or by necessary or impelling implication provides that an assignment of an oil and gas lease made in the last month of the last year of the term of the lease, although not having operating effect until the first day of the succeeding month, shall be ineffectual as an assignment of the lease and as an extension of the term for a period of two years. In other words, it is not clear that Congress intended that the imperceptible instant of time intervening between the termination of the lease term and the effective date of the assignment should render ineffectual such assignment. It was the administrative practice under the Leasing Act, in order to facilitate administration with respect to rental payments, times of expiration of leases and other like matters, to have lease terms begin on the first day of a month and terminate on the last day of the month. It is not unreasonable to assume that the purpose of the provision in § 30(a), as amended, supra, that an assignment or sublease should take effect as of the first day of the month following the date of the filing in the proper land office was to facilitate administration, rather than limit extensions of lease terms by such assignments to not more than one year and eleven months after the expiration of the lease term. Accordingly, while we accept the construction of the Secretary in the decision of August 11, 1958, we are of the opinion that the pertinent provisions of the Leasing Act were reasonably open to the construction reached

by the Assistant Solicitor by his opinion of June 4, 1957.

Where the Department of the Interior has decided that a statute should be given a different interpretation than that reflected by its earlier decisions and that such decisions should be overruled, it has been a rule in the Department since at least as far back as 1917 not to give its later decisions retroactive effect, especially when to do so would adversely affect actions taken and rights and interests acquired by private persons on the faith of the earlier decisions and would inure to the benefit of other private persons.[2]

Since the interpretation of § 30(a), as amended, supra, reflected in the opinion of the Assistant Solicitor, was not a non-permissible or an unreasonable one, because of that opinion, the practice by the Bureau of Land Management in following such opinion, and the practice of the Department, where the facts and circumstances were like those present in the instant cases, not to give retroactive effect to a decision overruling a former decision, lessees and assignees of leases, who on the strength of the Solicitor's opinion had made and acquired, respectively, assignments of leases in the last month of the extended term, or who, in August 1957, intended to make and acquire assignments of leases in the last month of their extended term, were justified in assuming that the construction of § 30(a), as amended, supra, by the Assistant Solicitor was correct and in the event it should be overruled by a later decision, such overruling decision would be given prospective operation only.

The administration of the public lands and the Acts of Congress with respect thereto and matters having to do with the development of such lands and the management and care of the interests of the United States therein, including the making and performance of contracts and leases affecting such lands, have been entrusted by the Congress to the Department of the Interior.

Necessarily, persons who have acquired oil and gas leases of public lands from the United States, in making assignments or subleases to other persons, in obtaining extensions of such leases, in performing the terms of such leases, in entering into contracts with third persons with respect to the exploration and development of such leases, in incurring liabilities and making expenditures in connection with the exploration, development and operation of such leases and in otherwise acting with respect to such leases, must in most cases act and rely upon interpretative regulations promulgated by, and decisions and opinions of the Department of the Interior interpreting applicable statutes and regulations, because ordinarily authoritative interpretations by court decisions are not available and lessees cannot postpone action awaiting adjudication of such matters in the courts.

■ It is a general rule that a decision of a court overruling an earlier decision is retrospective, as well as prospective, in its operation.[3]

■ However, the general rule is subject to a well-settled exception that courts ordinarily will give prospective effect

---

2. See Franco Western Oil Company, 65 I.D. 427, 429, 430, 431 (1958); Extension of Oil and Gas Lease Pursuant to Acts of December 22, 1943, and September 27, 1944, Where Leased Lands Are Partly Within Known Producing Structure, 58 I.D. 766, 774 (1944); the last cited decision was followed in Anna R. Pahl A–24350 (1947); and that decision was upheld by the District Court for the District of Columbia in Anna R. Pahl v. Marion Clawson, Director of the Bureau of Land Management, and Oscar L. Chapman, Secretary of the Interior, Civil Number 3309–48, unreported (see 65 I.D.

430, 431); Rights-of-Way Across Tribal and Allotted Indian Lands on the Flathead Reservation, Montana, 58 I D. 319, 330, 331; Timothy Sullivan, Guardian of Juanita Elsenpeter, 46 L.D. 110, 113 (1917).

Such rule of prospective operation has been followed by other administrative agencies. See 1 Davis, Administrative Law Treatise (1958) § 5.09, pp. 350–352.

3. Groner v. United States, 8 Cir., 73 F.2d 126, 130; Ruppert v. Ruppert, 77 U.S. App.D.C. 65, 134 F.2d 497, 500; Jackson v. Harris, 10 Cir., 43 F.2d 513, 516;

only to a decision overruling prior decisions where persons have contracted, acquired rights, or acted in reliance on the prior decision, and the operation of the later decision retrospectively would result in substantial harm to such persons.[4]

The power of a court to make its decisions operate only prospectively "whenever injustice or hardship will thereby be averted" is undoubted.[5]

It is obvious that the Secretary of the Interior, in carrying out his functions in the administration and management of the public lands, must be accorded a wide area of discretion and it is a well-recognized rule that administrative action taken by him will not be disturbed by a court unless it is clearly wrong.[6]

We conclude that the Secretary of the Interior, under facts and circumstances like those present in the instant cases, should have and does have authority, when he promulgates an interpretative regulation, or hands down a decision placing a different construction on a statute or regulation from that laid down in an earlier decision or regulation, to give prospective operation only to the later regulation or decision.

The Secretary's brief contends that dismissal of the suits was also proper because of the absence of the lessees, who are indispensable parties. We do not reach that question.

The judgments are severally affirmed.

Legg's Estate v. Commissioner of Internal Revenue, 4 Cir., 114 F.2d 760, 764; Peterson v. John Hancock Mut. Life Ins. Co., 8 Cir., 116 F.2d 148, 151; Sunray Oil Co. v. Commissioner of Internal Revenue, 10 Cir., 147 F.2d 962, 963, c.d. 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982.

4. Jackson v. Harris, 10 Cir., 43 F.2d 513, 516; Gt. Northern Ry. v. Sunburst Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360; The City v. Lamson, 9 Wall. 477, 76 U.S. 477, 485, 19 L.Ed. 725; Mercantile Nat. Bank of Cleveland, Ohio v. Lander, C.C.N.D.Ohio, 109 F. 21, 26; Ruppert v. Ruppert, 77 U.S.App.D.C. 65, 134 F.2d 497, 500; Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 645, 136

A.L.R. 1025, c. d. 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543; Collins v. Webb, D.C. N.D.Cal., 133 F.Supp. 877, 879. Also see Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, 7 P.2d 919, 927.

5. Gt. Northern Ry. v. Sunburst Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360; Massaglia v. Commissioner of Internal Revenue, 10 Cir., 286 F.2d 258, 261; Collins v. Webb, D.C.N.D.Cal., 133 F.Supp. 877; Mercantile Nat. Bank of Cleveland, Ohio v. Lander, C.C.N.D.Ohio, 109 F. 21, 26.

6. McKenna v. Seaton, 104 U.S.App.D.C. 50, 259 F.2d 780, 784, c. d. 358 U.S. 835, 79 S.Ct. 57, 3 L.Ed.2d 71.